[Cite as *Miamisburg v. Rinderle*, 2015-Ohio-351.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF MIAMISBURG | : | |
| | : | Appellate Case No. 26094 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CRB-1073-A |
| v. | : | |
| | : | |
| MICHAEL A. RINDERLE | : | (Criminal Appeal from |
| | : | Miamisburg Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of January, 2015.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, 10 North First Street, Miamisburg, Ohio 45432
    Attorney for Plaintiff-Appellee

DANIEL D. WEINER, Atty. Reg. No. 0008179, 4848 Marshall Road, Kettering, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Michael A. Rinderle appeals from his conviction and sentence in Miamisburg Municipal Court on one count of falsification, a first-degree misdemeanor violation of R.C.

2921.13(A)(3).

{¶ 2} The record reflects that Rinderle was charged by complaint for allegedly making a 911 call and falsely accusing his wife of chasing him with a knife. The call resulted in police responding to his home and arresting his wife. Rinderle later recanted the allegation, and his wife was released. He was charged with falsification as a result. Rinderle subsequently moved to dismiss the complaint because the jurat on the complaint reflected that it had been sworn to several months *before* the offense occurred. The prosecutor filed a purported affidavit from the officer who had sworn to the complaint explaining that the date at issue was a clerical error. After holding a hearing at which the officer testified, the trial court overruled the motion to dismiss. The trial court also overruled a motion to dismiss due to alleged discovery violations and a motion to dismiss on speedy-trial grounds. In addition, it sustained a motion to quash a subpoena directed toward the prosecutor. The case proceeded to a February 12, 2014 bench trial where the trial court found Rinderle guilty. It imposed a 180-day jail sentence, suspended all but four days, and imposed other sanctions, including a fine. Rinderle unsuccessfully sought a stay of execution of sentence both here and in the trial court. This appeal followed.

{¶ 3} Rinderle's first three assignments of error challenge the trial court's subject-matter jurisdiction due to an allegedly defective complaint. Specifically, he argues that the trial court lacked jurisdiction, and should have dismissed the complaint, where (1) the date in the jurat predated the date of the offense, (2) the subsequent "affidavit" attempting to correct the error was not sworn, and (3) testimony at the hearing on the issue established that the complaint was not sworn to at all.

{¶ 4} Upon review, we conclude that the trial court possessed subject-matter

jurisdiction and that it properly overruled Rinderle's motion to dismiss. "It is basic that a charge of a criminal offense must be grounded upon some form of presentment recognized at law. One method of charging an individual with crime is by an affidavit." *State v. Williams*, 14 Ohio Law Abs. 637, 638 (2d Dist.1933). "An affidavit is meaningless and without legal effect if it is not authenticated by the signature of the individual who makes the statements in the affidavit. A part of the jurat is that the instrument was sworn to and subscribed before the officer taking the oath of the affiant. Without such subscription there is no basis whatever of a charge of crime against the defendant." *Id.*

{¶ 5} The Ohio Supreme Court has recognized, however, that "[a] jurat is not part of an affidavit, but is simply a certificate of the notary public administering the oath, which is prima facie evidence of the fact that the affidavit was properly made before such notary." *Stern v. Bd. of Elections of Cuyahoga Cnty.*, 14 Ohio St. 2d 175, 181, 237 N.E.2d 313, 317 (1968). "Common prudence dictates that a properly executed jurat be attached to every affidavit although, strictly speaking, it is not part of the affidavit, but simply evidence that the affidavit has been properly sworn to." (Citation omitted) *Id.* Where a jurat is missing or defective, other evidence may be used to show that the affidavit was properly sworn. As the Eleventh District has recognized, "Crim.R. 3 does not contain any express reference to the presence of a jurat in a complaint; instead, as to the 'oath' requirement, the rule only states that the complaint must be made under oath before a person who has the power to administer the necessary oath." *State v. Davies*, 11th Dist. Ashtabula No. 2012-A-0034, 2013-Ohio-436, ¶ 24. Thus, even "the total omission of the jurat, will not render [a] complaint void under all circumstances." *Id.* at ¶ 26. "Instead, the validity of the complaint can still be upheld if the prosecution can otherwise show, based

upon other language in the document or evidence outside the record, that a proper oath was administered by a person duly authorized to take the oath." *Id*. This court long ago recognized the same principle in *Taxis v. Oakwood*, 19 Ohio Law Abs. 498 (2d Dist.1935), noting that an affidavit missing a jurat may be amended nunc pro tunc and that "evidence aliunde" may be relied on to establish that an oath was administered. *Id.* at 501.

**{¶ 6}** In the present case, the complaint alleged that Rinderle's offense occurred on *September 11, 2012*. The complaint was signed by Detective Craig Griffith. It included a jurat indicating that on *May 31, 2012* it had been sworn to and subscribed in the presence of a Detective Ring, a "peace officer authorized to administer oaths pursuant to O.R.C. 2935.081." (Doc. #2). Even if we accept, arguendo, that this obvious error regarding the date on the jurat rendered it ineffective, Griffith subsequently testified under oath at a hearing on the issue. He explained that the date on the jurat was a typographical or clerical error and that he actually swore to the complaint in 2013, rather than in 2012, in the presence of a peace officer authorized to administer an oath. (Dec. 16, 2013 Tr. at 6, 8-9). Based on the authority set forth above, the trial court was entitled to rely on this evidence to find that a proper oath was administered to Griffith and that he swore to the complaint after the date of Rinderle's offense.[1]

**{¶ 7}** We are unpersuaded by Rinderle's suggestion that Griffith's testimony at the hearing failed to establish that he actually swore to the complaint. On cross examination, Griffith recalled presenting the complaint to Detective Ring for review. When discussing his interaction with Ring on cross examination, Griffith did not specifically mention

---

[1] At one point during his testimony, Griffith misspoke and stated that he had sworn to the complaint on March 31, 2013. (Dec. 16, 2013 Tr. at 8). It is apparent to us that he meant May 31, 2013.

swearing to the complaint in Ring's presence. (Dec. 16, 2013 Tr. at 18-19). As noted above, however, Griffith already had provided explicit direct-examination testimony about swearing to the complaint in Ring's presence. (*Id.* at 6, 8-9). Therefore, the trial court was entitled to rely on Griffith's testimony to find that the complaint had been properly sworn to in Ring's presence on May 31, 2013.

{¶ 8} In light of the foregoing conclusion, we need not determine whether Griffith's purported affidavit, which was filed in the trial court on November 14, 2013, was ineffective because it was not sworn to at all.[2] Regardless of the validity of that document, Griffith's hearing testimony, alone, was sufficient for the trial court to find that he properly had sworn to the complaint after Rinderle's offense. Therefore, the trial court had subject-matter jurisdiction and properly overruled Rinderle's motion to dismiss based on a defect in the complaint.

{¶ 9} In opposition to the foregoing conclusion, Rinderle cites this court's opinion in *State v. Bishop*, 2d Dist. Clark No. 3070, 1993 WL 495624 (Dec. 3, 1993), which involved a complaint that was defective because it was not signed by a complainant. In *Bishop*, this court relied on Crim.R. 3 and *Columbus v. Jackson*, 93 Ohio App. 516, 114 N.E.2d 60 (2d Dist. 1952), for the proposition that a valid complaint is a prerequisite to jurisdiction and that a complaint must be made under oath by a person authorized to administer one. Because the complaint in *Bishop* was unsigned, this court held that the trial court lacked subject-matter jurisdiction. In our view, *Bishop* bears no similarity to the present case,

---

[2] In that "affidavit," Griffith explained that the date in the jurat was a clerical error and that he actually swore to the complaint on May 31, 2013. Although this filing was styled as an affidavit, it did not explicitly state that it had been sworn to at all. (Doc. #16). Underneath Griffith's explanation and signature was another person's signature with the following stamped notation: "Peace officer authorized to administer oaths pursuant to O.R.C. 2935.081."

which is readily distinguishable. We also find *Jackson* distinguishable because the arresting officer there admitted that he had not sworn to the complaint when it was filed. *Jackson* at 517. In contrast, Griffith testified that he did swear to the complaint when it was filed. He simply wrote the wrong date on the jurat. For the foregoing reasons, Rinderle's first, second, and third assignments of error are overruled.

**{¶ 10}** In his fourth, fifth, and sixth assignments of error, which are briefed together, Rinderle contends the trial court erred in overruling his motions to dismiss based on alleged discovery violations and speedy-trial grounds, and in quashing a subpoena directed toward the prosecutor.

**{¶ 11}** With regard to discovery, Rinderle mentions (1) a CD of the 911 call not being able to be "opened" or accessed and (2) two CDs of officers' activities at the scene of the offense being "impossible to hear." (Appellant's brief at 14-15). The record reflects, however, that the problem accessing the 911 call was resolved. During a hearing, the prosecutor acknowledged that there had been "an issue with the 911 call." (Feb. 12, 2014 Pretrial Tr. at 2). The prosecutor explained that her office ultimately downloaded software to play the call and that defense counsel then came to her office and recorded it. (*Id.*). Defense counsel agreed that what the prosecutor said was true and admitted that he successfully had recorded the 911 call "twice" and had listened to it "many, many times[.]" (*Id.* at 2, 5). Therefore, no issue exists with regard to the CD of the 911 call.

**{¶ 12}** As for the two CDs of officers' activities at the scene, they were not raised as an issue in Rinderle's January 31, 2014 discovery motion. (Doc. #22). He did not complain about them until immediately before his trial started on February 12, 2014. At that time, his counsel asserted that only "bits and pieces" of conversations could be heard

on the CDs. (*Id.* at 14). The record contains nothing, however, to suggest that the prosecutor possessed a better copy of the CDs or that there was any way to remedy the problem. In light of these facts, we find no error pertaining to discovery.

{¶ 13} Rinderle's argument about a speedy-trial violation is equally unpersuasive. In substance, he actually raises a due-process challenge to the roughly eight-month delay between the commission of his offense and the filing of the complaint against him. This court has recognized that such "pre-indictment delay does not raise the issue of the right to a speedy trial which attaches only after criminal charges are instituted." *State v. Ellis*, 2d Dist. Montgomery No. 15963, 1997 WL 282313, *3 (May 30, 1997). Nevertheless, "'[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.'" *Id.*, quoting *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), at paragraph two of the syllabus.

{¶ 14} Although Rinderle claims he need not show prejudice resulting from the eight-month delay at issue, he is mistaken. He cites *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), which involved *post-indictment* delay and "presumptive prejudice" under a Sixth Amendment speedy-trial analysis. The notion of presumptive prejudice "'has no application to pre-indictment delays.'" *State v. Powell*, 2d Dist. Montgomery No. 16013, 1997 WL 231196, *2 (May 9, 1997), quoting *State v. Stickney*, 2d Dist. Montgomery No. 14232, 1994 WL 680159 (Dec. 4, 1994). This court has recognized that pre-indictment delay not exceeding the applicable statute of limitation

is "not prejudicial in the absence of specific evidence to the contrary." (Citation omitted) *Id.*; see also *State v. Carter,* 2d Dist. Clark No. 2010-CA-25, 2011-Ohio-751, ¶ 15 (recognizing that "in order to support a dismissal on the basis of delay in indictment, a defendant must present evidence demonstrating an actual and substantial prejudice").

{¶ 15} In arguing to the contrary, Rinderle cites *State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971). In *Meeker*, the Ohio Supreme Court did hold that "[t]he constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment." *Id.* at paragraph three of the syllabus. Shortly thereafter, however, the United States Supreme Court decided *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and held that the Sixth Amendment's speedy-trial guarantee did not apply to pre-indictment delay. After *Marion*, the Ohio Supreme Court limited *Meeker* to its facts. *Luck* at 153; see also *State v. Jones*, 2d Dist. Champaign No. 91 CA 20, 1992 WL 289676, *1 (Oct. 19, 1992) (opining that *Luck* effectively overruled the third paragraph of *Meeker's* syllabus).

{¶ 16} Rinderle also contends this court in *State v. Kelly*, 101 Ohio App.3d 700, 656 N.E.2d 419 (2d Dist.1995), applied a speedy-trial analysis and held that a pre-indictment delay of five months was too long absent a showing of necessity. Although *Kelly* did consider the existence of both pre-indictment and post-indictment delay, this court clarified *Kelly* in *State v. Glasper*, 2d Dist. Montgomery No. 15740, 1997 WL 71818 (Feb. 21, 1997), reasoning:

> Our decision in *Kelly* rested upon speedy trial grounds rather than
> due process. As we previously discussed, the speedy trial clause does not

apply in the present case because Glasper has only asserted a pre-indictment delay. Furthermore, the case law with respect to post-indictment delays is markedly different from pre-indictment cases in that prejudice can be presumed in post-indictment cases. Courts have found post-accusation delays presumptively prejudicial when the delay lasted a year or more.

Pre-indictment delays, on the other hand, cannot be presumptively prejudicial if they are brought within the applicable statute of limitations because statutes of limitations guarantee against a prosecutor bringing overly stale charges. * * * Instead, it is, in a sense, presumed that if an indictment is brought within the period defined by the statute of limitations, the defendant has suffered no prejudice. The statute of limitations only guard against possible prejudice, however. Thus, a defendant may overcome this presumption by demonstrating actual prejudice. The defendant will not satisfy his or her burden of proof by merely generally alleging the possible prejudice inherent in any delay, for example, that memories have faded, witnesses may be inaccessible, and evidence may be lost. The defendant must identify the specific prejudice suffered, and that prejudice must be substantial, for instance, that important taped witness interviews were destroyed or that key witnesses have died.

*Id.* at *4.

{¶ 17} In light of the foregoing analysis, we conclude that Rinderle cannot demonstrate a due-process violation based on the eight-month delay in filing a complaint

against him unless he shows actual prejudice. He has not seriously attempted to make this showing. He advances only a one-sentence argument that "memories fade as time passes." (Appellant's brief at 16). As a general proposition, of course, this may be true. Rinderle has not identified any particular "memory" at issue, however, or explained how its fading prejudiced him. As this court noted in *Glasper*, a broad assertion of fading memories does not establish actual prejudice. Therefore, we find no merit in Rinderle's due-process based "speedy-trial" argument.

{¶ 18} Finally, we reject Rinderle's challenge to the trial court's quashing of a subpoena directed toward the prosecutor. His entire argument on the issue is as follows:

Appellant subpoenaed Christine Burk for the February 12, 2014 hearing and trial. The prosecutor filed a motion to quash the subpoena and the Court, without setting the matter for a hearing or giving the Appellant's counsel notice, issued a decision and entry quashing the subpoena. (Doc. 28, 29, 31, 32).

The [S]ixth [A]mendment guarantees an accused to have compulsory process for obtaining witnesses. Appellant submits that quashing a subpoena without a hearing clearly violated Defendant's due process rights.

(Appellant's brief at 16-17).

{¶ 19} The record reflects that Rinderle's counsel filed a praecipe for the subpoena on February 10, 2014. Counsel sought to subpoena the prosecutor in his case to appear "at 1:30 P.M. on Wednesday February 12, 2014 to testify in this matter" and to bring her case file. (Doc. #28). The following morning, the prosecutor moved to quash the

subpoena. (Doc. #31). The prosecutor noted that both a discovery hearing and trial were scheduled for February 12, 2014. With regard to discovery, the prosecutor stated that, as an officer of the court, she could provide any needed information without being sworn in as a witness. With regard to trial, she noted that she lacked first-hand information about the facts of the case. Finally, the prosecutor argued that testifying as a witness would disqualify her from trying the case, would necessitate a special prosecutor, and would delay the trial. (*Id.*). The trial court filed a brief decision and entry on the afternoon of February 11, 2014 sustaining the motion to quash. (Doc. #32).

{¶ 20} On appeal, Rinderle appears to challenge the trial court's quashing of the subpoena without a hearing. We recognize that a trial court ordinarily must hold a hearing before quashing a subpoena. *In re Subpoena Duces Tecum Served Upon Atty. Potts*, 100 Ohio St.3d 97, 2003-Ohio-5234, 796 N.E.2d 915, at paragraph two of the syllabus. Although the trial court did not hold an evidentiary hearing before sustaining the prosecutor's motion to quash, it did permit Rinderle's counsel to argue the issue immediately before trial commenced on February 12, 2014. (Feb. 12, 2014 Pretrial Tr. at 8-11). At that time, the trial court reaffirmed its decision. (*Id.*). Given that Rinderle did not file his praecipe for a subpoena until February 10, 2014, just two days before the start of his trial, we are unconvinced that the trial court erred in failing to hold a separate evidentiary hearing at the last minute. But even if the trial court did err in failing to hold a hearing, the error was harmless because the subpoena plainly was improper. Rinderle's counsel asserted that he wanted to cross examine the prosecutor to be sure she had provided full discovery. (*Id.* at 7). In response, the prosecutor represented that she had made her "entire file" available to the defense. (*Id.* at 8-9). Defense counsel admitted

having seen the file at least once. (*Id.* at 10). Under these circumstances, and absent *any* evidence to suggest that the prosecutor had violated her continuing obligation under Crim.R. 16, defense counsel had no right to cross examine the prosecutor for purposes of a "fishing expedition" or what the trial court characterized as "a shotgun accusation that maybe you haven't received all of the discovery." (*Id.* at 8). The fourth, fifth, and sixth assignments of error are overruled.

{¶ 21} In his seventh assignment of error, Rinderle claims the trial court erred in sentencing him to jail as punishment for refusing to enter a plea and exercising his right to a trial.

{¶ 22} "It is beyond dispute that 'a defendant is guaranteed the right to a trial and should never be punished for exercising that right.'" *State v. Blanton*, 2d Dist. Montgomery No. 18923, 2002 WL 538869, *2 (April 12, 2002), quoting *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). "Accordingly, when imposing a sentence, a trial court may not be influenced by the fact that a defendant exercised his right to put the government to its proof rather than pleading guilty." *Id.* A trial court also should refrain from making "statements that suggest an intent to punish a defendant for proceeding to trial." *Id.*

{¶ 23} Contrary to Rinderle's argument, we see no evidence that the trial court imposed a jail sentence to punish him for proceeding to trial. In the portion of the transcript he cites, the trial court merely noted the existence of a plea offer. The prosecutor then stated that if Rinderle would plead to the falsification charge, the government would request a suspended jail sentence without any actual jail time. In response, the trial court reiterated that "[i]f there is a plea, there would be a recommendation from the prosecutor

of no jail." Defense counsel indicated that he understood the offer. (Dec. 16, 2013 Tr. at 24).

**{¶ 24}** We find nothing in the foregoing exchange to support Rinderle's claim that the trial court imposed four days of non-suspended jail time to punish him for rejecting the plea offer. The trial court simply reiterated the prosecutor's offer without suggesting any intent to punish him if he rejected it. In any event, Rinderle's argument about the imposition of actual jail time rather than suspended jail time is moot because he has served the four days the trial court imposed. Accordingly, the seventh assignment of error is overruled.

**{¶ 25}** Based on the reasoning set forth above, the judgment of the Miamisburg Municipal Court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

Christine L. Burk
Daniel D. Weiner
Hon. Robert W. Rettich, III