[Cite as *State v. Myers*, 2020-Ohio-59.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

STATE OF OHIO, :

    Appellee, : CASE NO. CA2019-01-003

    - vs - : O P I N I O N
    1/13/2020

:

JOSEPH L. MYERS, :

    Appellant. :

CRIMINAL APPEAL FROM MADISON COUNTY MUNICIPAL COURT
Case No. CRB1800750

Stephen J. Pronai, Madison County Prosecuting Attorney, 59 North Main Street, London, Ohio 43140, for appellee

L. Patrick Mulligan & Associates, LLC, Laura M. Woodruff, L. Patrick Mulligan, 28 North Wilkinson Street, Dayton, Ohio 45402, for appellant

**RINGLAND, J.**

{¶ 1} Appellant, Joseph Myers, appeals his conviction in the Madison County Municipal Court after a jury found him guilty of criminal mischief. For the reasons detailed below, we affirm.

{¶ 2} On September 20, 2018, appellant was charged with one count of criminal mischief in violation of R.C. 2909.07(A)(1), a third-degree misdemeanor. The state alleged

that appellant had knocked down and removed a section of fence located in the Paint Township Cemetery. Appellant appeared without an attorney and represented himself pro se.

{¶ 3} Pertinent to this matter is a long-held grievance by appellant against the Township. Appellant owns property and lives next door to the cemetery. In a pretrial filing to the court, appellant submitted a series of deeds, surveys, correspondence, and miscellaneous interpretations of the law with respect to, among other things, boundary lines and permissible uses of the cemetery. According to the record before this court, appellant believes that, based on his review of the deeds, surveys, and interpretations of law, that there is a public roadway that the Township is denying public access to or blocking.

{¶ 4} Throughout these proceedings, appellant filed three sets of subpoenas for various County and Township officials and employees. On October 9, 2018, appellant commanded the following individuals to appear at a pretrial conference duces tecum: (1) Dave Hughes with the Madison County Zoning Department, (2) Bryan Dhume, a Madison County Engineer, (3) Phil Eades, a Paint Township Trustee, (4) Steve Cordell, a second Paint Township Trustee. The subpoenas requested that the individuals provide him "all and every piece of information" and "all paperwork, zoneing [sic] request, orders written and verbal, letters, notes of any kind including texts" relating to the Paint Township Cemetery and adjoining property. The state moved to quash the subpoenas as overbroad, oppressive, unreasonable, irrelevant, vague, and filed under the wrong case number. The trial court granted the state's motion to quash.

{¶ 5} On October 22, 2018, appellant reissued the subpoenas for the same four individuals for a jury trial scheduled on November 1, 2018. The subpoenas were also requested duces tecum, again requesting "all and every piece of information" or "all paperwork" relating to the cemetery. The state, again, moved to quash, which the trial court

granted. However, the trial was continued until January 17, 2019.

{¶ 6} On January 8, 2019, appellant reissued just one subpoena for Trustee Cordell and requested that he "[b]ring all paperwork regarding said Fence including receipts and date at installation." The subpoena for Cordell commanded him to appear on January 16, 2019 at 10:30 am, the day before trial. The state did not move to quash the subpoena and it is not known whether Cordell appeared.

{¶ 7} The matter proceeded to a jury trial on January 17, 2019. The state presented the testimony of Jared Miller, a seasonal employee with the Township who was hired to cut the cemetery's lawn. At trial, Miller testified that he had observed appellant driving a tractor along the fence line. When Miller approached the area where the tractor had been, he observed that the fence had been pulled down and dragged down a hill.

{¶ 8} Deputy Wesley Davis was dispatched to the cemetery to investigate the damage to the fence. Deputy Davis observed the damaged fence and interviewed Miller and appellant. Deputy Davis testified that appellant was very evasive and refused to answer "yes or no" questions.

{¶ 9} Next, Trustee Jeff Kibler testified that appellant did not have permission to tear down the cemetery fence. Kibler testified that the fence was erected by the Township to limit access to the cemetery and to prevent rural snowmobilers and four-wheelers from driving through the cemetery. Kibler stated that appellant has had issues with the Township with regard to the fence and had previously expressed a desire to remove the fence.

{¶ 10} Following the admission of exhibits, the state rested. Appellant attempted to call Cordell as a witness. However, since the subpoena was issued for the wrong day, Cordell was not in attendance and was not subject to the subpoena. Therefore, appellant proceeded with his own testimony.

{¶ 11} Appellant testified that he "moved" the fence but denied any wrongdoing.

Instead, appellant maintained that he was the true owner of the fence due to property he acquired from a trust. Upon conclusion of the testimony, the matter was submitted to the jury for deliberation. Thereafter, the jury found appellant guilty of criminal mischief. Appellant now appeals, raising four assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S MOTIONS TO QUASH THE DEFENDANT'S SUBPOENAS.

{¶ 14} In his first assignment of error, appellant argues the trial court erred by granting the state's motions to quash. Appellant's argument is without merit.

{¶ 15} Crim.R. 17(C) confers upon the trial court the discretion to quash or modify a subpoena, on motion of a party, if compliance would be "unreasonable or oppressive." *State v. Baker*, 12th Dist. No. CA2009-06-079, 2010-Ohio-1289, ¶ 15. A trial court's decision on a motion to quash is reviewed for an abuse of discretion. *Id*. An abuse of discretion implies more than an error of law or judgment; it suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226 at ¶ 23.

{¶ 16} Pursuant to Crim.R. 17(C), when deciding a motion to quash a subpoena duces tecum prior to trial, a trial court must hold an evidentiary hearing. *Baker* at ¶ 21, citing *In re Subpoena Duces Tecum Served Upon Atty. Potts*, 100 Ohio St. 3d 97, 2003-Ohio-5234, ¶ 16. At the hearing, the burden is on the proponent of the subpoena to demonstrate that the subpoena is not unreasonable or oppressive. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 129. The proponent accomplishes this by showing:

> that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may

tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.*, quoting *United States v. Nixon*, 418 U.S. 683, 699-700, 94 S.Ct. 3090 (1974).

{¶ 17} The Third District Court of Appeals recently addressed a similar issue in *State v. Bennett*, 3d Dist. Wyandot No. 16-19-03, 2019-Ohio-4937, where the court found that, in limited circumstances, the failure to hold a hearing can be subject to a harmless error analysis if the subpoena was plainly improper. *Id.* at ¶ 85, citing *Miamisburg v. Rinderle*, 2d Dist. Montgomery No. 26094, 2015-Ohio-351, ¶ 20.

{¶ 18} In *Bennett*, the defendant was convicted of gross sexual imposition of a child. *Id.* at ¶ 1. On appeal, the defendant argued that the trial court erred by failing to hold an evidentiary hearing before quashing a subpoena for tax records of the child's parents. *Id.* at ¶ 75. Noting that a hearing should be held pursuant to *Potts*, the court expressed hesitation in reversing a verdict where the record demonstrates that the subpoena plainly had no merit and would have no impact on a trial that had already occurred. *Id.* at ¶ 85. Instead, the court found that the subpoenas were mere fishing expeditions to find potentially impeachable information. *Id.* at ¶ 86.

{¶ 19} Following review, we believe this case represents such an instance where a harmless error analysis should be employed. We begin by noting that all of the subpoenas were inartfully drafted and requested documents that would be difficult, if not impossible, to comply with. For example, appellant requests "all and every piece of information" related to practically all areas of Township cemetery matters. In addition, appellant requests the production of documents including "orders written and verbal." It is not at all clear how the Township could comply with such a request.

{¶ 20} This is compounded by various errors appellant made in his subpoenas. The first set of subpoenas requested the presence of the four listed witnesses for a pretrial

conference where there is no suggestion that any testimony or evidence was to be heard. The second set of subpoenas were issued for the appropriate day, but the trial was ultimately continued. Appellant's final attempt to subpoena a witness commanded the witness' attendance on the wrong day.

{¶ 21} The record also reflects that the information sought from the subpoenaed individuals was plainly improper as it relates to information excluded by the trial court. In this case, the trial court granted the state's motion in limine, which "restrict[ed] any discussions about the lane going back into the cemetery being a public road or having access to a public road." Though appellant claims the subpoenaed individuals "would have relevant information about the fence, its location, property ownership, and whether the defendant has permission to alter the fence," this is plainly a reference to his argument concerning deeds, surveys, correspondence, and miscellaneous interpretations of the law with respect to, among other things, the boundary lines and permissible uses of the cemetery. The trial court found that appellant's submitted materials on that issue were "sketchy and haphazard at best" and if he wished to pursue those matters the appropriate venue was through a civil action or zoning petition.

{¶ 22} Though we recognize that appellant was acting pro se in the proceedings below, pro se litigants are bound by the same rules and procedures as members of the bar, regardless of their familiarity with them. *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 22. Pro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure. *State v. Kline*, 12th Dist. Warren No. CA2004-10-125, 2005-Ohio-4336, ¶ 9. Under these specific factual circumstances, we decline to find reversible error and instead find that any error was, at worst, harmless. Therefore, because we find the trial court committed, at worst, harmless error, we overrule appellant's first assignment of error.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY ABOUT THE DEFENDANT'S STATEMENTS IN VIOLATION OF THE FIFTH AMENDMENT.

{¶ 25} In his second assignment of error, appellant argues the trial court violated his Fifth Amendment Rights. Appellant's second assignment of error is without merit.

{¶ 26} During trial, Deputy Davis testified that he tried to speak with appellant as part of his investigation, but found him to be "uncooperative," "beat around the bush," and was evasive. Deputy Davis testified that appellant "would not answer yes or no" to his questions and "refused to make a statement." When Deputy Davis asked appellant if he had removed the fence, appellant refused to provide a yes or no answer, and instead went to get some papers from the basement. It is undisputed that appellant did not object to the statements. Therefore, this issue is reviewed under the plain error standard.

{¶ 27} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." S*tate v. Biros*, 78 Ohio St.3d 426, 436 (1997). This court should notice plain error with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice. *Widmer*, 2012-Ohio-4342 at ¶ 84.

{¶ 28} The use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, syllabus. In *Leach*, the Ohio Supreme Court held, in limited circumstances, testimony concerning prearrest silence is appropriate if it is introduced as

evidence of the "course of the investigation." *Id.* at ¶ 32. The court concluded that while it was improper to admit the investigator's direct testimony regarding the defendant's decision to exercise his right to silence through the invocation of counsel over the telephone, the investigator's testimony regarding the defendant's failure to keep his scheduled appointment with the police was "legitimate." *Id.*

{¶ 29} Following review of the record, it is clear that Deputy Davis was not commenting on appellant's silence, but rather his nonresponsive and evasive answers to questions appropriately asked during the course of an investigation. Consistent with *Leach*, Deputy Davis' testimony was related to the course of his investigation and was "legitimate." Furthermore, appellant did not invoke his right to silence and, in fact, testified in his own defense at trial. The Ohio Supreme Court has held that pre-*Miranda* silence may be used for impeachment purposes if the defendant testifies at trial. *See Leach* at ¶ 21-23, citing *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124 (1980). In this case, Deputy Davis' testimony was not an improper comment of appellant's right to silence, nor was it improper as appellant testified at trial. As a result, we find appellant was not deprived of his Fifth Amendment Rights. There was no error, much less plain error, with regard to Deputy Davis' testimony. Appellant's second assignment of error is overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE SUFFICIENCY OF THE EVIDENCE DOES NOT SUPPORT THE APPELLANT'S CONVICTIONS.

{¶ 34} In his third and fourth assignments of error, appellant argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

Appellant's argument is without merit.

{¶ 35} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 36} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

{¶ 37} Criminal mischief requires the state prove that appellant, without privilege to do so, knowingly moved, defaced, damaged, destroyed, or otherwise improperly tampered with the property of another. R.C. 2909.07(A)(1).

{¶ 38} The state presented evidence of the eyewitness, Miller, who observed appellant driving his tractor back and forth. Later, Miller observed that appellant had torn down and moved the cemetery fence.

{¶ 39} The state also presented evidence that Paint Township erected and owned the fence in question and appellant did not have permission to tear down the fence. Trustee Kibler testified that the Township erected the fence to keep the general public from passing through the cemetery for inappropriate purposes. According to Kibler, "we put it in there because in a rural area, people's snowmobiles, four wheelers, dirt bikes. And we can't have them running in and out of the cemetery. It's just, I mean, that's the reason we put it up." Kibler further explained that the fence has been a source of disagreement between the Township and appellant. Kibler explained that appellant "wanted access to the back of his property * * * he thinks he should be able to use our bridge and our driveway to access the back of his property to cross the creek."

{¶ 40} Appellant testified on his own behalf and admitted that he removed the fence. However, in a lengthy declaration, appellant denied owning the tractor discussed during trial, and claimed to have bought property in 1991 that made him the true owner of the fence. Appellant then stated that he suffered from a disability and isn't some "beach guy" that could "tear this fence up." Appellant then continued to express disagreement with some of the testimony and aired certain grievances he had with the Township.

{¶ 41} Following review, we find appellant's conviction is supported by sufficient evidence and the jury's verdict is not against the manifest weight of the evidence. The jury heard evidence that appellant removed the cemetery fence and the state presented evidence that the Township owned the fence and did not give appellant permission to remove it. While appellant argued that he was the true owner of the fence, it is well established that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. As the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *State v. Davis*, 12th Dist.

Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 43. To the extent that appellant claims ownership of the fence, or takes issue with the interpretation of past deeds, those are matters that should be addressed through proper civil channels. Appellant was not permitted to resort to "self-help" remedies by destroying the Township's fence. As a result, appellant's third and fourth assignments of error are overruled.

{¶ 42} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.