[Cite as *State v. Kinzy*, 2010-Ohio-6499.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 MO 7 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RICKY A. KINZY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:            Criminal Appeal from Monroe
County Court, Case No. 06 TRC 20.

JUDGMENT:                            Affirmed.

APPEARANCES:
For Plaintiff-Appellee:              Attorney L. Kent Reithmiller
                                     Prosecuting Attorney
                                     Attorney Thomas Hampton
                                     Assistant Prosecuting Attorney
                                     101 North Main Street
                                     Room 15
                                     P.O. Box 430
                                     Woodsfield, OH  43793

For Defendant-Appellant:             Attorney John A. Vavra
                                     132 West Main Street
                                     P.O. Box 430
                                     St. Clairsville, OH  43950

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 22, 2010

[Cite as *State v. Kinzy*, **2010-Ohio-6499**.]
DeGenaro, J.

{¶1}    This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this Court. Defendant-Appellant, Ricky Kinzy, appeals the August 26, 2009 judgment of the Monroe County Court convicting him of a second OVI offense. Kinzy argues the trial court erred by denying his motion to suppress because his arrest was the result of an illegal investigatory stop on private property.

{¶2}    Because Kinzy voluntarily exited his car and approached the Deputy the initial encounter was consensual for Fourth Amendment purposes. Moreover, the Deputy had a reasonable articulable suspicion of criminal activity that justified the stop, which, although mistaken at the time, did not affect the validity of the stop because the mistake was objectively reasonable. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3}    At 2:45 a.m., on March 27, 2009, Ricky Kinzy and his girlfriend left a local bar and started down State Route 145, approximately one-half mile from Kinzy's residence. A Sheriff's Deputy turned onto State Route 145 behind Kinzy in order to do a business check at Stephen's Tires and Lube. The Deputy performs such routine business checks often and conducts them in order to see if the business has been vandalized or broken into.

{¶4}    Kinzy's property is located next to Stephen's Tire and Lube with a garage at the edge of his property immediately adjacent and to the right of Stephen's Tire and Lube. Kinzy's residence sits further back on his property to the right of the garage and slightly behind it. Because the garage has its own driveway separate from the house, Kinzy parks in the driveway and walks through the yard to his house. Kinzy testified that the garage sits closer to the business than his residence.

{¶5}    After seeing Kinzy pull into what he thought was the driveway leading to the garage for the business, the Deputy pulled behind Kinzy to investigate, parking about fifteen feet behind Kinzy's vehicle. The Deputy activated neither his lights nor siren. Kinzy noticed a car behind him, got out of his truck and approached the cruiser to find out who it was. As Kinzy approached, the Deputy got out of the cruiser and noticed that

Kinzy smelled strongly of alcohol. The Deputy asked Kinzy to return to his car while he checked Kinzy's license. It was not until the Deputy asked for Kinzy's license, that Kinzy told him that the driveway in which they were parked was his private property. After checking Kinzy's license, the Deputy approached Kinzy's car and noticed a six-pack with two bottles missing and an open container. Although Kinzy claimed the open bottle was for tobacco spit, the bottle contained no spit and it smelled of beer.

{¶6} After conducting field sobriety tests which he failed, the Deputy arrested Kinzy, who later registered a 0.212 on the breathalyzer test. Kinzy was issued a citation for operating a motor vehicle with a prohibited breath alcohol content and for an open container violation.

{¶7} Kinzy filed motions to suppress and dismiss arguing that because the Deputy had no reasonable articulable suspicion to stop him, all evidence gained from the stop, including the results of the field sobriety test and the breathalyzer, should be suppressed. After a hearing on the motion, the parties filed post-hearing briefs and the trial judge viewed the scene.

{¶8} The trial court denied the motions, concluding that the stop was lawful because although the Deputy was mistaken that Kinzy was on the business property, the mistake was objectively reasonable:

{¶9} "Based on the two exhibits [photographs of the scene], the nature and coloring of the garage and adjacent business and the presence of an equipment trailer in the driveway, it certainly would be reasonable for the officer to assume that garage was associated with the business rather than the residence. It appears from the two exhibits that the garage is actually closer to the business than the defendant's residence. * * * [T]he court finds that the officer's belief was objectively reasonable at the time the stop was made, even though his belief was subsequently determined to be incorrect."

{¶10} The State dismissed the open container charge and Kinzy entered a plea of no contest to the OVI charge, and because this was a second OVI offense Kinzy was sentenced accordingly, which was stayed pending appeal.

**Validity of Stop**

**{¶11}** On appeal, Kinzy asserts one assignment of error:

**{¶12}** "The court erred in overruling the motion of the Appellant to suppress evidence acquired as the result of an illegal investigatory stop."

**{¶13}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. Because the trial court is the trier of fact and therefore in the best position to resolve factual questions and evaluate the credibility of witnesses, *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. Conversely, the appellate court conducts a de novo review to determine whether the facts satisfy the applicable legal standards at issue in the appeal. Id.

**{¶14}** Kinzy argues the Deputy's investigatory stop was not valid because he encountered Kinzy in his private driveway. He further argues that the Deputy's mistaken belief that he had pulled onto the property of Stephen's Tire and Lube was not objectively reasonable.

**{¶15}** There are three types of police encounters with citizens; consensual encounters, investigative or Terry stops, and arrests. See *Florida v. Royer* (1982), 460 U.S. 491, 501-507, 75 L.Ed 2d 229, 103 S.Ct. 1319. Germane to this appeal are the first two.

**{¶16}** A police encounter is considered consensual where a person is free to walk away from the officer and may refuse to answer questions. *State v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L.Ed 2d 497, 100 S.Ct. 1870. Thus, "there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Id. An encounter may be deemed consensual when a police officer approaches and questions individuals in or near a parked car. See, e.g., *State v. Johnston* (1993), 85 Ohio App.3d 475, 478, 620 N.E.2d 128. It may also be consensual even when the encounter takes place on private property. *State v. Williams* (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108; *State v. Szewczyk* (Sept. 14, 1999), 7th

Dist. No. 98 CA 20, at *2-3.

{¶17} In *Williams,* supra, a deputy was on private property investigating a complaint that three persons had been observed leaving a rural, partially wooded private property, when he discovered marijuana fields and radioed for backup. Meanwhile, Williams arrived at the farmhouse on the property and stopped ostensibly to get permission to hunt. The deputy saw Williams, approached him and asked Williams what he was doing there. Williams, thinking the plainclothes deputy was another hunter, stated that he was there to squirrel hunt. The deputy, knowing it was nearly too late in the day to legally hunt and observing that Williams did not have a hunting rifle, directed Williams to follow him to his car, where the deputy patted him down and from that seized evidence which led to Williams' arrest. The Ohio Supreme Court concluded that the initial encounter between the officer and Williams was consensual:

{¶18} "We observe initially that no apparent 'seizure' of Williams occurred, and thus the Fourth Amendment was not implicated, until Deputy Garst asked Williams to accompany him to Garst's car. Garst's approach to Williams, and his initial question ('I asked him what he was doing there'), cannot be said to have restrained Williams's liberty in such a way that he was not free to leave." Id. at 61.

{¶19} Similarly here, the initial encounter between the Deputy and Kinzy was consensual. The Deputy pulled behind Kinzy in a driveway. Kinzy admits that he did not initially realize when he stopped his truck that a police cruiser was behind him. Kinzy got out of his vehicle and approached the Deputy to ask him what he was doing there. The Deputy had not turned on his lights or siren, had not stepped out of his cruiser, and had not indicated in any way that he intended to detain Kinzy. Based on the totality of the circumstances, the initial contact between Kinzy and the Deputy was consensual.

{¶20} Kinzy next argues that the Deputy's belief that Kinzy was parked on the business property was unreasonable. Even assuming arguendo the initial encounter was not consensual, the Deputy had reasonable suspicion to stop Kinzy.

{¶21} An investigatory, or Terry stop, occurs when the officer stops to investigate unusual or suspicious behavior. The officer "must be able to point to specific and

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed 3d 889. An investigatory stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *U.S. v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

**{¶22}** The Deputy testified he was doing a routine business check and stopped to investigate why someone was on what he thought was Stephen's Tire and Lube property at 2:45 a.m. The fact that the Deputy was mistaken does not make the stop invalid as the mistake was objectively reasonable.

**{¶23}** "[A] police officer's mistake of fact will not lead to the suppression of evidence where the mistake was 'understandable' and a reasonable response to the situation facing the police officer." *State v. Fain* (Jan. 21, 1998), 9th Dist. No. 18306, at *2, citing *Hill v. California* (1971), 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484. In *Fain*, the arresting officer believed that the driver of a vehicle was Dwayne Fain, whose license the officer believed was expired, rather than the true driver, Haward Fain. Id. Based on this mistaken identity, the officer conducted a further investigation by getting consent to pat Fain down. Id. The court held that the officer had reasonable, albeit mistaken, grounds for continuing the investigation and that the evidence from the further investigation should not be suppressed. Id. at *2-3.

**{¶24}** Similarly, in *State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070, the court held that an officer's otherwise reasonable suspicion that a crime had occurred, based upon his observation of a driver failing to a stop at a stop sign or to activate her turn signal, was not rendered unreasonable by the officer's mistaken belief that the stop sign was located on public roadway. Id. at ¶17. The court noted there was no indication that the officer's mistake as to private nature of property was merely pretense or part of deceptive course of conduct. Rather, the officer reasonably believed that roadway was public at time he pulled the driver over, and did not discover his mistake until the next day. Id.

**{¶25}** Many of the cases on point regarding police officer mistake involve probable

cause rather than a reasonable, articulable suspicion. However, the same principle applies in this case as in those dealing with probable cause, especially since probable cause is a *higher* standard. In *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698 the Ohio Supreme Court followed the Ninth Circuit Court of Appeals in holding that the issue was about an objective belief that there was a violation:

**{¶26}** "We agree with the sentiment expressed in a federal case involving an officer who had stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer 'was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation.' *United States v. Wallace* (C.A.9, 2000), 213 F.3d 1216, 1220.

**{¶27}** "Similarly, in this case, the issue is not how well the officer understood the city's ordinances requiring the authorization of the posting of traffic-control devices. Rather, the existence of probable cause depends on whether an objectively reasonable police officer would believe that appellee's conduct in exiting City Lot 2 constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Godwin* at ¶15-16.

**{¶28}** Likewise, in *State v. Walters*, Walters argued the police officer lacked probable cause to stop him because he had broken no law. *State v. Walters*, 12th Dist. No CA2004-04-043, 2005-Ohio-418, at ¶3. The officer pulled Walters over because he violated a "no left turn" sign posted at the exit of a gas station. Id. at ¶2. However, this sign did not conform to the Ohio Manual of Uniform Traffic Control. Id. at ¶3. Nevertheless, Walters was arrested for DUI. The court held the stop was valid because the officer reasonably believed that Walters had committed a traffic violation despite the sign not being "posted in compliance with the OMUTCD." Id. at ¶10.

**{¶29}** 1Similarly here, the question is not how well the Deputy knew the plat lines or how familiar he was with the area, but whether the Deputy's mistake that Kinzy was on the business property was objectively reasonable. It was objectively reasonable that the Deputy mistook Kinzy's driveway for that of the business. The incident occurred at 2:45

a.m. and it would have been dark. Kinzy's garage looks similar to the business's building and the two buildings stand only a dozen or so feet from each other. Kinzy admitted that his garage was closer to the business than his residence, which sits to the right and behind the garage by a distance of several dozen feet.

{¶30} And after the initial contact, the Deputy had reasonable suspicion to detain Kinzy. The Deputy noticed a strong odor of alcohol and Kinzy admitted he had been drinking. The Deputy then asked for Kinzy's license and Kinzy returned to his vehicle. When the Deputy approached Kinzy's vehicle to return his license, he observed a six-pack of bottled beer in Kinzy's car with a couple of bottles missing. The Deputy also observed an open bottle of beer in one of the vehicle's cup holders. Kinzy claimed this was for spitting tobacco, but the Deputy found no evidence of tobacco in the bottle, only beer. From Kinzy's conduct the Deputy had reasonable suspicion to have Kinzy perform a field sobriety test.

{¶31} The trial court correctly denied the motion to suppress. The initial encounter between Kinzy and the Deputy was consensual, but assuming arguendo it was not, the Deputy had a reasonable articulable suspicion to make the stop. That Kinzy was not on the adjacent business property as the Deputy thought, but rather on his own private property does not change the outcome because the Deputy's mistaken belief was objectively reasonable. Accordingly, the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.