[Cite as *State v. Sears*, 2020-Ohio-4654.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-372 |
| v. | : | (C.P.C. No. 18CR-2374) |
| Randolph M. Sears, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 29, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant.

**On brief:** *Yeura R. Venters*, Public Defender, and *Ian J. Jones*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a decision and entry of the Franklin County Court of Common Pleas that granted the motion to suppress filed by defendant-appellee, Randolph M. Sears. For the following reasons, we affirm the trial court judgment.

## I. Facts and Procedural History

{¶ 2} On December 23, 2017, Columbus Police Officers were dispatched to a residence on Atcheson Street regarding a report of a stolen white vehicle and that the suspect had an outstanding felony warrant for a probation violation. The officers were given a description of the suspect as an African American male wearing a gray hoodie and his approximate height and weight. The officers knew they were looking for Alvie Fryar and they were able to view a mugshot picture of the suspect briefly while traveling to the

location. Officers Alexander Rilling and David Gitlitz were the first officers to arrive. Officer Rilling testified that, as they were in the alley behind the house, he saw the stolen car and three men in the back yard. Officer Rilling stated he exited his vehicle and immediately approached the man in the gray hoodie, Sears, but Officer Rilling believed the man was the suspect, Alvie Fryar. Officer Rilling did not recall whether he spoke to the men or asked them for identification. Officer Rilling did tell Sears to put his hands behind his back. Officer Rilling stated that almost "immediately" Sears told the officers he had a gun and Officer Gitlitz recovered the gun from the front pocket of Sears' hoodie. (Tr. at 11.) The officers then placed Sears in the back of the cruiser to verify his identity. Officer Rilling testified they determined that Sears was not Fryar but they believed the two men looked alike, although Officer Rilling commented that Sears looks younger than Fryar.

{¶ 3} Officers Gitlitz and Matthew Jenkins were wearing body videocams that day and the footage was introduced as State's Exhibit B. Officer Rilling testified regarding the events captured on tape. Officer Jenkins also testified he responded to the stolen vehicle call. He knew the suspect's name, Alvie Fryar, and had a prior mugshot of him, along with the report number for the stolen vehicle. Officer Jenkins realized the officers had arrested someone other than Fryar, however, the officers subsequently did arrest Fryar at the same location.

{¶ 4} Sears testified he was at a Christmas party at his brother's house and was standing in the back yard when officers arrived. Sears testified that, as he approached, Officer Rilling asked his name and he replied "Randolph Sears." (Tr. at 34.) Officer Rilling then asked him who was driving the white car and Sears told them the man was inside the house. Sears believed Officer Rilling was going to walk by him, but the officer then pulled Sears' hands behind his back and asked if he had any weapons. On the video, Sears can be seen telling the officers he had a gun. Sears stated he told the officers his name as they approached.

{¶ 5} Sears was indicted on one count of carrying a concealed weapon, a violation of R.C. 2923.12, and one count of having a weapon under a disability, a violation of R.C. 2923.13. Sears filed a motion to suppress. After a hearing, the trial court determined the arrest of Sears was not objectively reasonable in light of the totality of the circumstances and granted the motion to suppress.

## II. Assignments of Error

{¶ 6}   The state appeals and assigns the following four assignments of error for our review:

> [I.] THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION TO SUPPRESS DESPITE CONCEDING THAT A VALID *TERRY* STOP COULD HAVE TAKEN PLACE.
>
> [II.] THE TRIAL COURT ERRED IN APPLYING A LEAST-INTRUSIVE-MEANS APPROACH TO THE FOURTH AMENDMENT QUESTION OF WHETHER THE POLICE COULD ARREST DEFENDANT BASED ON PROBABLE CAUSE.
>
> [III.] THE TRIAL COURT ERRED IN RESTRICTING THE MISTAKEN-IDENTITY DOCTRINE TO CASES IN WHICH THE EVIDENCE WILL BE USED AGAINST THE INTENDED TARGET OF THE ARREST.
>
> [IV.] THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE GOOD-FAITH EXCEPTION.

## III. Discussion

## A. Standard of review

{¶ 7}   An appellate court's review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

## B. Constitutional protections

{¶ 8}   The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Ohio Constitution includes a very similar provision. Article I, Section 14 Ohio Constitution.

{¶ 9} "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.*, citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990). Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures as per se unreasonable, unless an exception applies. *Katz* at 357.

{¶ 10} "When a motion to suppress evidence obtained in a warrantless search is filed, the state has the burden of establishing that one of the exceptions applies." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 39. *See also Columbus v. Ellyson*, 10th Dist. No. 05AP-573, 2006-Ohio-2075, ¶ 5, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974) ("Upon a motion to suppress evidence on Fourth Amendment grounds, the state has the burden of showing, by at least a preponderance of the evidence, that the search and/or seizure fits within one of the defined exceptions to the Fourth Amendment's requirement of a warrant.").

{¶ 11} "An appellate court reviews the propriety of an investigative detention in light of the totality of the surrounding circumstances." *Columbus v. Beasley*, 10th Dist. No. 17AP-629, 2019-Ohio-719, ¶ 44, citing *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, approving and following *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

## C. Analysis

{¶ 12} The trial court determined the officers would have been permitted to conduct a *Terry* stop, based on their reasonable, articulable suspicion that Sears had committed receiving stolen property and had an outstanding warrant. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). However, the trial court found Officer Rilling did not conduct a limited pat-down or briefly investigate suspected criminal behavior but, rather, immediately pulled Sears' arms behind his back, began a pat-down and asked him if he had any weapons. Thus, the trial court found that at that time, instead of a *Terry* stop, the encounter became an arrest.

The trial court then found the arrest was not objectively reasonable in light of the totality of the circumstances because the officers did not conduct any investigation and cross-check the information regarding Sears' identity prior to making an arrest.

{¶ 13} In the first assignment of error, the state argues the trial court erred when it granted the motion to suppress despite conceding that a valid *Terry* stop could have taken place. Sears argues the state is arguing for the first time on appeal that the arrest was permissible under *Terry* and, generally, issues not raised by a party during a suppression hearing cannot be raised for the first time on appeal. *State v. Bing*, 134 Ohio App.3d 444, 449 (9th Dist.1999). The state argued to the trial court that given the totality of the circumstances, the arrest, search and detention of Sears was based on a reasonable mistake of the officers believing Sears was Fryar. In response, the state contends the argument is permissible for the first time because the trial court addressed the issue. The state contends that since the trial court found the officers would have been permitted to conduct a *Terry* stop based on their reasonable, articulable suspicion that Sears had committed receiving stolen property and had an outstanding warrant, such *Terry* stop would have led to the same discovery of the evidence.

{¶ 14} Pursuant to *Terry*, an investigatory stop and a frisk or pat-down for weapons may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if two conditions are met. First, the investigatory stop must be lawful. A stop is lawful where an investigating officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). The second condition requires the investigating officer to "reasonably suspect that the person stopped is armed and dangerous" and if so, then the officer may conduct a pat-down for weapons. *Id.* at 327. Under the Fourth Amendment, a seizure occurs "[w]henever a police officer accosts an individual and restrains his freedom to walk away." *Terry* at 16. "[W]hen the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 19, fn. 16.

{¶ 15} However, despite the fact the trial court found the officers could have conducted a valid *Terry* stop based on their reasonable, articulable suspicion that Sears had

committed receiving stolen property and had an outstanding warrant, the trial court found the officers did not conduct a *Terry* stop but proceeded directly to arrest Sears.

{¶ 16} "An arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Beasley* at ¶ 58, citing *State v. Darrah*, 64 Ohio St.2d 22, 26 (1980). " '[A]n officer need not state, "You are under arrest." ' " *Id.*, quoting *Columbus v. Clark*, 10th Dist. No. 14AP-719, 2015-Ohio-2046, ¶ 34, quoting *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, ¶ 14 (1st Dist.). " 'Rather, arrest "signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." ' " *Id.*, quoting *Clark* at ¶ 34, quoting *Darrah* at 26. "Ultimately, 'the point at which an arrest occurs depends on the circumstances of the particular case.' " *Id.* at ¶ 59, quoting *Columbus v. Galang*, 10th Dist. No. 02AP-1441, 2003-Ohio-4506, ¶ 16, citing *State v. Finch*, 24 Ohio App.3d 38, 39 (12th Dist.1985).

{¶ 17} We recognize that officers with probable cause to arrest a suspect who mistakenly arrest an individual matching the suspect's description, does not render the seizure or an accompanying search of the arrestee unlawful. *See Hill v. California*, 401 U.S. 797, 802-05 (1971). However, "the mistakes must be those of reasonable men." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Thus, a " 'police officer's mistake of fact will not lead to the suppression of evidence where the mistake was "understandable" and a reasonable response to the situation facing the police officer.' " *State v. Kinzy*, 7th Dist. No. 09 MO 7, 2010-Ohio-6499, ¶ 23, quoting *State v. Fain*, 9th Dist. No. 18306 (Jan. 21, 1998), and citing *Hill* at 804 (officer mistakenly believed driver was Dwayne Fain, whose license was indefinitely suspended, rather than the true driver whose last name was also Fain). If the officer uses physical force or a show of authority to restrain a person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise disengage from the encounter, such can make an encounter non-consensual. *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980).

{¶ 18} In this case, the trial court determined the officers' mistake was not reasonable. The officers immediately began to arrest Sears by pulling his arms behind his back, conducting a pat-down and asking him if he had weapons. In addition, the trial court

watched the officers' body videocam footage and determined Sears believed he was being arrested at the time. During the search incident to the arrest, Sears volunteered that he had a gun in his pocket which became the basis of the charges against him. The trial court found the facts were similar to *Fettes v. Hendershot*, S.D.Ohio No. 06-CV-429 (Sept. 8, 2008), *rev'd in part and remanded, Fettes v. Hendershot*, 375 Fed.Appx. 528 (6th Cir.2010). In *Fettes*, the court stated:

> Under the reasonable mistake test, an officer's good faith is insufficient to cleanse an otherwise unconstitutional arrest. *See Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir.1989). Rather, the Court must determine whether the arrest was objectively reasonable in light of the totality of the circumstances.

{¶ 19} As Officer Rilling approached Sears, Sears told him his name was Randolph Sears and offered his identification in his pocket multiple times. The officers had the name and a photograph of the suspect, but they failed to determine whether Sears was actually the suspect, Fryar. The trial court found it unreasonable that given there were three men in the back yard of the location that matched the general description of Fryar, the officers did not hesitate and approached Sears. The trial court found it unreasonable that the officers did not engage in a limited investigation and verify Sears' identity before arresting him.

{¶ 20} The trial court determined Sears was credible and noted that "[d]efendant told Officer Rilling his name and repeatedly requested that the Officers check his identification; the Officers just failed to do so." (Decision at 12.) The court further found "the Officers arrested Sears within seconds and even *after* he told them his name and offered to provide identification." (Emphasis sic.) (Decision at 14.) We are required to accept the trial court's findings of fact if they are supported by competent, credible evidence. Here, we find the trial court's conclusions are supported by competent, credible evidence as Sears' testimony supports the finding that the arrest occurred after Sears told the officers his name. Therefore, we cannot say the trial court erred in concluding the officers' mistake was not objectively reasonable under all the facts of the case. Despite the fact the trial court stated that the officers could have conducted a *Terry* stop, the trial court found a *Terry* stop did not occur but, rather, found that the officers immediately moved to arrest Sears. The state attempts to argue that if the officers had conducted a *Terry* stop,

the stop would have led to the discovery of the weapon.  However, given the facts in this case support that the officers did not conduct a *Terry* stop but moved immediately to arrest Sears, the state cannot argue fictional facts to reach a different outcome

{¶ 21} Moreover, Sears argues the trial court did not set forth that the officers could have conducted a *Terry* search and found the weapon while doing so.  The trial court stated "[d]uring the course of a <u>Terry</u> stop, the officers would have been permitted to conduct a limited pat-down of Defendant, if they believed he was armed and dangerous" following *Terry*.  (Decision at 10.)  Here, the record does not demonstrate the officers suspected Sears was armed and dangerous until Sears told them he had a weapon.  The state's first assignment of error is overruled.

{¶ 22} In its second assignment of error, the state contends the trial court erred in applying a least-intrusive-means approach to the Fourth Amendment question of whether the officers could arrest Sears based on probable cause.  The state contends the trial court requiring a less-intrusive alternative than arrest does not mean the challenged action violated the Fourth Amendment because reasonableness under the Fourth Amendment does not require employing the least intrusive alternative, citing *Bd. of Edn. of Indep. School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 837 (2002).

{¶ 23} Although the state characterizes the trial court's decision as one requiring the least-intrusive alternative, the trial court's determination was actually that the alternative the officers used was not reasonable under the totality of these circumstances.  The trial court properly considered whether the officers made an objectively reasonable mistake in arresting Sears and found the mistake was not reasonable under these circumstances.  The trial court did not apply an incorrect test or standard.

{¶ 24} Sears argues the facts of this case are similar to *In re* [*V.W.*], 10th Dist. No. 01AP-563 (Dec. 27, 2001).  In *V.W.*, police officers observed a white substance in the appellant's mouth and then "shook appellant's jacket and a bag, of what appeared to be crack, fell out from the bottom of appellant's jacket." *Id.*  This court found the observation of a substance in the appellant's mouth gave officers a reasonable and articulable suspicion of criminal activity to warrant a *Terry* stop and an investigation but did not provide probable grounds for an arrest.  Finding no probable cause to arrest, this court found the arrest invalid.  Those facts are similar to the facts of this case in which the arrest was not

based on a reasonable mistake and was invalid.  The state's second assignment of error is overruled.

{¶ 25} In its third assignment of error, the state contends the trial court erred in restricting the mistaken-identity doctrine to cases in which the evidence will be used against the intended target of the arrest.  The trial court distinguished *Hill* by finding that the evidence the officers used in *Hill* was against the defendant, Hill, not the mistaken arrestee Miller.  However, in this case, the evidence produced in the search was used against the mistaken arrestee Sears, in separate charges.

{¶ 26} However, the court determined in *Hill* that the arrest based on a mistaken identity was valid and therefore, "neither the seizure nor an accompanying search of the arrestee would be unlawful."  *Heien v. N. Carolina*, 574 U.S. 54, 61 (2014).  But in this case, the trial court determined that the arrest based on a mistaken identity was not reasonable and valid, thus, the seizure and accompanying search of the arrestee were unlawful.  With an unreasonable arrest, the trial court properly determined the evidence should be suppressed and not used against Sears.  The state's arguments fail to acknowledge this finding.  The state's third assignment of error is overruled.

{¶ 27} By its fourth assignment of error, the state contends the trial court erred when it failed to apply the good-faith exception.  The exclusionary rule operates to bar the state's use of evidence obtained in violation of a person's Fourth Amendment rights.  *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court").  The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."  *United States v. Calandra*, 414 U.S. 338, 348 (1974).  However, there are exceptions to the application of the exclusionary rule, one of which is the good-faith exception.  *United States v. Leon*, 468 U.S. 897 (1984), and adopted by the Supreme Court of Ohio in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).

{¶ 28} The good-faith exception to the exclusionary rule provides that "the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral

magistrate but ultimately found to be unsupported by probable cause." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 29, citing *Leon* at 918-23, 926. The good-faith exception is supported by the rationale that, generally, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter." *Leon* at 920-21.

{¶ 29} In *State v. Wintermeyer*, 10th Dist. No. 16AP-381, 2017-Ohio-5521, ¶ 38, this court stated that "underlying *Leon* and its progeny is the general principle that the exclusionary rule's purpose, i.e. deterrence of police conduct in violation of the Fourth Amendment, is not achieved by punishing an officer for acting in objectively reasonable reliance on information or authority that, unbeknownst to the officer, was erroneous." In this case, Officer Rilling was not acting in objectively reasonable reliance on information that later was revealed to be erroneous. Rather, he personally made the mistake without verifying Sears' identity. In *State v. Simon*, 119 Ohio App.3d 484, 488 (9th Dist.1997), the Ninth District found that "[i]t is significant that the mistake * * * was not made by a third person, but by the officers themselves." Such conduct is precisely what the exclusionary rule is meant to deter. *Herring v. United* States, 555 U.S. 135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."). Therefore, because the officers were not acting in objectively reasonable reliance on erroneous information, we conclude the good-faith exception is inapplicable. *See also State v. Dickman*, 10th Dist. No. 14AP-597, 2015-Ohio-1915, ¶ 26; *State v. Forrest*, 10th Dist. No. 11AP-291, 2011-Ohio-6234, ¶ 17-18.

{¶ 30} The state makes several arguments as to why the good-faith exception applies in this case. However, in *Dickman*, this court explained why the good-faith exception is inapplicable to these facts:

> [T]he state cites broad language from *Davis* [*v. United States*, 564 U.S. 229, 131 S.Ct. 2419 (2011)] regarding the deterrent aims of the Fourth Amendment as justification for urging us to go further and hold that the "good faith exception" should act as a balancing test in all cases. The state urges us to give broad application to what it calls the "*Herring–Davis* test," citing the windfall to defendants when the exclusionary rule is applied. (State's Brief, 49.) However, we have interpreted

that an exception to the exclusionary rule as enunciated in [*United States v.*] *Leon* [468 U.S. 897 (1984)] and recognized in *Davis* is that, error for applying the exception to the rule " 'rests with the issuing magistrate, not the police officer, and "punish[ing] the errors of judges" is not the office of the exclusionary rule.' " *State v. Thomas*, 10th Dist. No. 14AP-185, 2015-Ohio-1778, ¶ 43, quoting *Davis* at 2428. We explained further in *Thomas* that Ohio courts have declined to apply the exception to the rule "in cases in which officers, conducting warrantless searches, relied on their own belief that they were acting in a reasonable manner, as opposed to relying upon another's representations." *Id.* at ¶ 46, citing *State v. Forrest*, 10th Dist. No. 11AP-291, 2011-Ohio-6234. We continue to recognize and hold that " '*Leon's* good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer.' " *Id.* at ¶ 47, quoting *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir.2006). * * * Consistent with *Thomas*, we find that there is no good-faith exception here.

The exclusionary rule has existed for a century to broadly protect our rights to be free from unlawful search and seizure. We find no basis for applying a good-faith exception under these admittedly subjective circumstances. " '[G]ood faith on the part of the arresting officers is not enough.' " [*Beck v. Ohio*, 379 U.S. 89, 97 (1964)], quoting [*Henry v. United States*, 361 U.S. 98, 102 (1959]. If subjective good faith created an exception to the exclusionary rule, enforcement of the Fourth Amendment for people to be "secure in their persons, houses, papers, and effects," would be at the discretion of the police. *Id.*

*Id.* at ¶ 26.

{¶ 31} *Dickman* cites and follows *State v. Thomas*, 10th Dist. No. 14AP-185, 2015-Ohio-1778, in which this court recognized that Ohio courts, including this court, have declined to apply the *Leon* good-faith exception in cases in which officers, conducting warrantless searches, relied on their own belief that they were acting in a reasonable manner, as opposed to relying on another's representations. Thus, this court has repeatedly found the good-faith exception does not apply where an officer does not rely, in an objectively reasonable manner, on a mistake made by someone other than the officer. Thus,

the good-faith exception does not apply to these facts. The state's fourth assignment of error is overruled.

**IV. Conclusion**

{¶ 32} For the foregoing reasons, on the facts of this case, we overrule the state's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and NELSON, JJ., concur.


NELSON, J., concurring in judgment only.

{¶ 33} I agree with the majority that the trial court found, as the evidence entitled it to do, that the arrest of Mr. Sears was not based on a reasonable mistake and was not justified. I consequently agree that the trial court's judgment should be affirmed (even while noting that had the identification and resulting arrest been found to be reasonable, evidence would not properly be excluded regardless of against whom it was offered).

{¶ 34} Indeed, it is because the trial court found the police conduct unreasonable that the good faith exception is inapplicable here. I respectfully suggest that is all we need say on that score, and I would simply leave exposition of the good faith exception to other cases in which it might have greater relevance.

_____