[Cite as *Molnar v. Wong*, 2021-Ohio-1402.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ERIKA MOLNAR, ET AL.,                          :

    Plaintiffs-Appellants,          :

                      No. 109440

    v.                              :

MARGARET W. WONG                               :
& ASSOCIATES CO., L.P.A., ET AL.

    Defendants-Appellees.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 22, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-904952

***Appearances:***

RaslanPla & Company, L.L.C., Jorge Luis Pla, and Nadia
R. Zaiem, *for appellants.*

Winter | Trimacco Co., L.P.A., Richard C. Alkire, and
Dean Nieding, *for appellees.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants, Erika and Zsolt Molnar ("the Molnars"), appeal a judgment denying their motion to quash a subpoena duces tecum issued to the Cleveland Police Department. They claim the following error:

The trial court abused its discretion in denying Mr. and Mrs. Molnar's motion to quash appellees' subpoena in violation of 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} The Molnars came to the United States from Romania in 2004 on ten-year, multiple-entry, B-2 nonimmigrant tourist visas. In 2005, the Molnars retained defendant-appellee, Margaret Wong & Associates Co., L.P.A. ("Wong & Associates" or "the firm"), to assist them in adjusting their immigration status from lawful, nonimmigrant temporary status to lawful immigrant permanent resident status. From April 2005 until October 2010, attorneys at Wong & Associates submitted immigration applications to the United States Citizenship and Immigration Services ("USCIS"),[1] but the attorney-client relationship ended before the Molnars received permanent resident status.

{¶ 4} In March 2010, the United States charged the Molnars as removable aliens and issued notices to appear in immigration court in October 2010. Shortly thereafter, the Molnars filed a complaint for legal malpractice against attorneys Margaret W. Wong, Lori A. Pinjuh, and Wong & Associates (collectively "defendants"), alleging that attorneys and paralegals at the firm made material

---

[1] The USCIS is an agency of the United States Department of Homeland Security. Pursuant to the Homeland Security Act of 2002, the authorities of the former Immigration and Naturalization Service ("INS") were transferred to three newly created agencies, including USCIS. Chen, *ARTICLE: Citizenship Denied: Implications of the Naturalization Backlog for Noncitizens in the Military*, 97 Denv. L. Rev. 669 (2020).

misrepresentations both to them and to the USCIS, which caused the Molnars to be subjected to deportation proceedings. The Molnars later informed Cleveland police that attorneys at Wong & Associates knowingly misled them and accepted legal fees for work pursuing immigration benefits that the attorneys knew, or should have known, the Molnars were not eligible to receive.

{¶ 5} Officers of the Cleveland Police Department signed and certified a Form I-918, Supplement B, stating that the Molnars were victims of qualifying criminal activities under the U immigrant visa ("U visa") program. In 2000, Congress passed the Victims of Trafficking and Violence Protection Act, codified as 8 U.S.C. 1101(a)(15)(U), which created the U visa program. Under this program, noncitizen aliens can petition for U nonimmigrant status if they have been victims of certain qualifying crimes and are willing to cooperate with the government and law enforcement in the investigation and prosecution of the criminal activity. If the alien meets the statutory requirements, the applicant may obtain employment authorization. After three years of U visa status and continuous presence in the United States, the applicant may apply for lawful permanent residency. 8 U.S.C. 1255(l)(1)(A). Thus, U visas allow victims of qualifying crimes to remain in the United States when they otherwise might not be allowed.

{¶ 6} It was thought that alien crime victims were less likely to report crimes to authorities due to fears of deportation. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 879, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("The aliens themselves are vulnerable to exploitation because they cannot complain of substandard working

conditions without risking deportation."). Hence, Congress stated that the purpose of the U visa program was to "encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens." *Victims of Trafficking and Violence Prevention Act of 2000*, Pub. L. No. 106-386, Section 1502, 114 Stat 1464, 1518 (2000).

{¶ 7} To apply for a U visa, an alien must fill out a Form I-918. The application also requires a Form I-918, Supplement B, which must be completed by a law enforcement officer. The Supplement Form B requires law enforcement officials to describe the alleged criminal activity and the kind of help the victim is providing to law enforcement. 8 C.F.R. 214.14(c)(2)(i).

{¶ 8} The Molnars alleged that attorneys at Wong & Associates committed the qualifying crimes of perjury, obstruction of justice, and theft by deception as a result of the firm's acceptance of legal fees charged for pursuing immigration benefits that the attorneys knew were not available to the Molnars. The Molnars further alleged that attorneys at Wong & Associates concealed the theft by knowingly making false statements, under penalty of perjury, to the United States Department of Homeland Security.

{¶ 9} In October 2014, the USCIS granted the Molnars U nonimmigrant status. The USCIS determined that the Molnars were victims of qualifying crimes, namely, obstruction of justice and theft by deception.[2] Three years later, in October

_____

[2] A USCIS decision to grant a U visa does not make any determination as to whether the alleged qualifying crimes were actually committed. *Sanchez v. Mukasey*, 508

2017, the Molnars voluntarily dismissed their legal malpractice case against the defendants, pursuant to Civ.R. 41(A).

{¶ 10} In September 2018, the Department of Homeland Security approved Erika Molnar's application to become a lawful permanent resident. It also approved Zsolt Molnar's application for lawful permanent resident status in January 2019. They received their green cards based on their U nonimmigrant status.

{¶ 11} Meanwhile, the Molnars refiled their legal malpractice case against the defendants. In Count 19 of the refiled complaint, the Molnars alleged that after submitting evidence they received in discovery during the first legal malpractice action to the USCIS, the USCIS concluded that the Molnars were victims of qualifying criminal activity and awarded them U nonimmigrant status. The Molnars later submitted an affidavit from Maria T. Baldini-Potermin, an immigration law expert, who cited the Molnars' U visa application and I-918 Supplement B forms and concluded that "had the USCIS not found that Erika and Zsolt [Molnar] were victims of these offenses, it would not have approved their U visas." (Supplemental affidavit of Maria T. Baldini-Potermin at ¶ 24.)

{¶ 12} In an effort to defend against the allegations, the defendants sought discovery of the facts underlying the I-918 Supplement B certifications, including the names of any certifying agencies and officers, who investigated the alleged criminal activity that the Molnars accused the defendants of committing.

---

F.3d 1254 (9th Cir.2007) (holding that the inclusion of a qualifying crime in an indictment or criminal complaint is not a predicate to the issuance of a U visa).

Defendants requested a complete unredacted copy of the Molnars' U visa applications, including the unredacted, signed Form I-918, Supplement B, U Nonimmigrant Status Certifications.

{¶ 13} Defendants also requested copies of documents the Molnars submitted to the Ohio Supreme Court Disciplinary Counsel, accusing the defendants of professional misconduct. The Molnars refused to produce the requested documents and filed a motion for a protective order, arguing that the identities of certifying agencies and officers were privileged under both 8 U.S.C. 1367(a)(2) and the implementing regulations set forth in 8 C.F.R. 214.14. The Molnars asserted that documents provided to the Ohio Supreme Court Disciplinary Counsel were privileged and not subject to discovery. Defendants opposed the motions for protective order and filed a motion to compel discovery.

{¶ 14} In a judgment entry dated November 14, 2019, the trial court granted the protective order in part and denied it part. The trial court held that 8 U.S.C. 1367(a)(2) does not preclude the defendants from discovering some of the Molnar's U visa information and ordered the Molnars to produce third-party support letters submitted to the USCIS, psychological reports submitted to the USCIS, the names of the certifying officers, and the identity of the agencies conducting the investigation. The court granted the protective order as to social security numbers, alien registration numbers, and receipt numbers contained in the Molnar's U visa applications, finding that those materials were not discoverable and were to be redacted from the materials released to the defendants. Finally, the trial court

concluded that documents the Molnars provided to the Ohio Supreme Court Disciplinary Counsel were privileged and not subject to discovery.

{¶ 15} With respect to the denial of the protective order, the trial court observed that "Plaintiffs' [C]omplaint specifically put their U visa application, medical conditions and medical treatment at issue in this case." (Nov. 14, 2019, judgment entry.) The court explained, in relevant part:

> Additionally, plaintiffs revealed in their complaint and subsequent motions that the USCIS granted U nonimmigrant status and ultimately permanent status to both Erika and Zsolt Molnar. * * * Therefore, any possible chilling effect due to the release of the U visa application would be muted as a result of plaintiffs' current status * * *.

(Nov. 14, 2019, judgment entry.)

{¶ 16} The Molnars did not appeal the denial, in part, of their motion for protective order. Instead, they produced the I-918 Supplement B forms, which identified the Cleveland Police Department as the certifying agency. The I-918 Supplement B forms also identified Detective John L. Stevens and Officer Steven S. Loomis as certifying officers.

{¶ 17} Upon receipt of the certifying officers' names and the law enforcement agency's identity, defendants propounded a subpoena duces tecum on Calvin D. Williams, Chief of the Cleveland Police Department, requesting production of documents pertaining to the department's investigation of the crimes of which the Molnars alleged they were victims. The subpoena sought (1) all documents, records, and things provided to the Cleveland Police Department by or on behalf of Erika Molnar; (2) all documents, records, and things provided to the Cleveland Police

Department by or on behalf of Zsolt Molnar; (3) all statements provided to the Cleveland Police Department by Erika Molnar; (4) all statements provided to the Cleveland Police Department by Zsolt Molnar; and (5) any and all documents, records, statements or things generated as a result of any investigation by the Cleveland Police Department.

{¶ 18} The Molnars moved to quash the subpoena, arguing the subpoena should be quashed because it required the Cleveland Police Department to produce their confidential U visa related documents. The Molnars also asserted that 8 U.S.C. 1367(a)(2) prohibits discovery from certifying agencies and that the Cleveland Police Department is a certifying agency. Defendants, on the other hand, argued that they were not requesting U visa documents and, even if they were, 8 U.S.C. 1367(a)(2) only applies to certain enumerated governmental agencies such as the United States Attorney General or the Department of Homeland Security and does not apply to local police departments.

{¶ 19} The trial court denied the motion to quash. This appeal followed.

## II. Law and Analysis

{¶ 20} In their sole assignment of error, the Molnars argue the trial court abused its discretion in denying their motion to quash the defendants' subpoena duces tecum. They contend the trial court's order violates 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14.[3]

---

[3] Although discovery orders are generally interlocutory and not immediately appealable, orders requiring the disclosure of privileged information are final, appealable orders. *Am. Environmental Group, Ltd. v. H.M. Miller Constr. Co.*, 8th Dist. Cuyahoga

## A. Standard of Review

{¶ 21} Civ.R. 26 permits broad discovery. *Esparza v. Klocker*, 8th Dist. Cuyahoga No. 101604, 2015-Ohio-110, ¶ 23. Civ.R. 26(B)(1) provides, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

{¶ 22} We generally review a trial court's judgment on discovery matters for an abuse of discretion. *Wall v. Ohio Permanente Med. Group Inc.*, 119 Ohio App.3d 654, 695 N.E.2d 1233 (8th Dist.1997). However, the trial court's interpretation of law governing privileged matters is a question of law that we review de novo review. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13, citing *Med Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237.

{¶ 23} The appropriate standard of review depends on whether the asserted privilege presents a question of law or a question of fact. *Randall v. Cantwell Mach. Co.*, 10th Dist. Franklin No. 12AP-786, 2013-Ohio-2744, ¶ 9. When interpreting

No. 100854, 2014-Ohio-4681, ¶ 13, citing *Johnson v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 80117, 2002-Ohio-1396.

statutory language to determine if requested information is privileged, we apply a de novo standard of review. *Id.* When the claimed privilege requires review of factual questions, an abuse-of-discretion standard applies. *Id.*

## B. Waiver

{¶ 24} As a preliminary matter, we must address the issue of waiver. Wong & Associates asserts that the Molnars waived their right to challenge the trial court's interpretation and application of 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14 because they never appealed the trial court's denial, in part, of their motion for protective order. Indeed, "[a] claim not set forth in the notice of appeal deprives the court of jurisdiction to consider it." *Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 152 Ohio St.3d 73, 2017-Ohio-7566, 93 N.E.3d 902; *see also In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 16.

{¶ 25} In denying the protective order in part, the trial court ordered production of some of the Molnars' U visa information. The court ordered production of third-party support letters submitted to the USCIS on behalf of Erika and Zolst Molnar, psychological reports submitted to the federal government as part of the U visa application, and the names of the certifying officers and the names of the agencies conducting the investigation. (Nov. 14, 2019, judgment entry.) And, the Molnars produced their I-918 Supplement B forms. Hence, the Molnars are barred from challenging the propriety of the court's judgment with respect to these documents because the issue as to whether these documents were privileged was never appealed.

{¶ 26} The trial court declined to compel the Molnars to produce their entire unredacted U visa application. Thus, the Molnars could still challenge subpoena requests for any unredacted information in the Molnars U visa applications. However, the subpoena did not specifically request unredacted U visa documents. To the contrary, the subpoena sought (1) all documents, records, and things provided to the Cleveland Police Department by or on behalf of Erika Molnar; (2) all documents, records, and things provided to the Cleveland Police Department by or on behalf of Zsolt Molnar; (3) all statements provided to the Cleveland Police Department by Erika Molnar; (4) all statements provided to the Cleveland Police Department by Zsolt Molnar; and (5) any and all documents, records, statements or things generated as a result of any investigation by the Cleveland Police Department. Although the defendants referenced the Molnars' I-918 forms in the subpoena, those references were made solely for case identification purposes because the Cleveland Police Department's case number on the I-918 forms the Molnars's produced were redacted, and the defendants had no other way of referencing the Molnar's case. Therefore, Wong & Associates asserts that the confidentiality provisions in 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14 are irrelevant with respect to the Molnars' motion to quash the subpoena because the subpoena did not request U visa documents.

{¶ 27} Although the subpoena did not expressly request unredacted U visa documents, we must nevertheless determine (1) whether the requested documents are subject to the confidentiality provisions set forth in 8 U.S.C. 1367(a)(2) and 8

C.F.R. 214.14, and (2) if so, whether they are nonetheless barred by the Molnars' failure to appeal the denial, in part, of its motion for protective order.

## C. Standing

**{¶ 28}** As another preliminary matter, Wong & Associates argues the Molnars lacked standing to challenge the subpoena propounded to the Cleveland Police Department. Wong & Associates contends that "only the one that is subpoenaed (in this case the CPD) has standing to file a motion to quash." (Appellee's brief p. 15.)

**{¶ 29}** However, Civ.R. 45(C) governs motions to quash subpoenas and "does not say a motion to quash can only be filed by the person subject to the subpoena." *Hanick v. Ferrara*, 7th Dist. Mahoning No. 19 MA 0074, 2020-Ohio-5019, ¶ 55. Civ.R. 45(A)(3) states the party issuing a subpoena "shall serve prompt written notice, including a copy of the subpoena, on all other parties * * *." The 2005 Staff Note to Civ.R. 45(A)(3) states the notice requirement was added for the purpose of providing other parties the opportunity to object to the production or inspection of subpoenaed documents. *Hanick* at ¶ 56.

**{¶ 30}** Civ.R. 34, which governs requests for production of documents in discovery, states, in relevant part:

> **(C) Persons Not Parties.** Subject to the scope of discovery provisions of Civ. R. 26(B) and 45(F), a person not a party to the action may be compelled to produce documents, electronically stored information or tangible things or to submit to an inspection as provided in Civ. R. 45.

Civ.R. 34(C) (emphasis sic). Thus, subpoenas issued to a nonparty pursuant to Civ.R. 45 are subject to the scope of discovery as defined by Civ.R. 26(B).

{¶ 31} Pursuant to Civ.R. 26(B)(1), a party may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action. In other words, a party is not entitled to privileged matter, even if it is requested from a nonparty, and a party has standing to object to the request. Moreover, Civ.R. 45(C)(3)(b) provides that a court "shall quash or modify the subpoena" if it "[r]equires disclosure of privileged or otherwise protected matter and no exception or waiver applies." And, again, the rule does limit who may file the motion to quash such a subpoena. Therefore, despite Wong & Associates' argument to the contrary, the Molnars had standing to file a motion to quash the subpoena propounded on the Cleveland Police Department on grounds that it sought privileged information.

### D. Confidentiality Provisions Applicable to U Visas

{¶ 32} Having determined that the Molnars had standing to file the motion to quash and that their failure to appeal the denial, in part, of their motion for protection order does not bar our review of the trial court's judgment with respect to the subpoena, we now turn our attention to the confidentiality provisions set forth in 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14.

{¶ 33} Subsection 1367(a)(2) of 8 U.S.C. 1367 provides, in relevant part:

Except as provided in subsection (b), in no case may the Attorney General, or any other official or employee of the Department of Justice, the Secretary of Homeland Security, the Secretary of State, or any other

official or employee of the Department of Homeland Security or Department of State (including any bureau or agency of either of such Departments)[.]

\* \* \*

(2) permit use by or disclosure to anyone \* \* \* of any information which relates to an alien who is the beneficiary of an application for relief under paragraph (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act \* \* \*.

{¶ 34} As previously stated, Section 1101(a)(15)(U) of the Immigration and Nationality Act permits noncitizens to petition for temporary status if he or she has been the victim of certain qualifying crimes. 8 U.S.C. 1101(a)(15)(U). Therefore, U visa applications fall within the scope of 8 U.S.C. 1367(a)(2). Furthermore, the plain language of the statute prohibits the agencies enumerated therein, i.e., the Attorney General, officials and employees of the Department of Justice, the Secretary of Homeland Security, etc., from disclosing information relating to an alien who is the beneficiary of an application for relief under the U visa program.

{¶ 35} Subsection 1367(b) of 8 U.S.C. 1367 provides a list of exceptions to the confidentiality requirements and allows disclosure of information by the referenced agencies to other law enforcement officials for legitimate law enforcement purposes in a manner that protects the confidentiality of the information. *See, e.g.,* 8 U.S.C. 1367(b)(2); 8 C.F.R. 214.14(e)(1)(ii). When one of the agencies listed in 8 U.S.C. 1367(a)(2) discloses information to other law enforcement agencies, the

> [a]gencies receiving information under this section, whether governmental or non-governmental, are bound by the confidentiality provisions and other restrictions set out in 8 U.S.C. 1367.

8 C.F.R. 214.14(e)(2). Thus, 8 C.F.R. 214.14(e)(2) prohibits local law enforcement agencies from disclosing U visa information if the local law enforcement agency received the information from one of the governmental entities enumerated in 8 U.S.C. 1367(a).

{¶ 36} Section 1367(a)(2) of 8 U.S.C. 1367 does not expressly preclude other governmental agencies, such as the Cleveland Police Department, from disclosing information related to an alien's U visa application. Wong & Associates argues that because local police departments are not included in the list of agencies set forth in 8 U.S.C. 1367(a)(2), local police departments are not bound by its confidentiality requirements.

{¶ 37} However, 8 C.F.R. 214.14(a)(2) defines the term "certifying agency" for purposes of the U visa program, in relevant part, as "a Federal, State, or local law enforcement agency * * * ." Therefore, the Cleveland Police Department, as a local law enforcement agency, is a certifying agency with the ability to complete Form I-918, Supplement B documents on behalf of aliens petitioning for U visas. Section 214.14(e) of 8 U.S.C. 214.14 governs restrictions on the use and disclosure of information relating to U visas and states, in relevant part, that "[t]he use or disclosure * * * of any information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited * * * ." Under the plain language of these provisions, any information relating a beneficiary of a pending or approved U visa is privileged. In other words, any information in possession of the

Cleveland Police Department that relates to the Molnar's U visa applications is privileged under 8 U.S.C. 214.14(e).

{¶ 38} Although the defendants' subpoena did not specifically request unredacted U visa documents, it sought information relating to their U visa applications, which is privileged under 8 C.F.R. 214.14(e)(2). Nevertheless, courts interpreting the confidentiality provisions of 8 U.S.C. 1367(a)(2) and 8 C.F.R. 214.14 have held that the privilege provided by those provisions is not absolute and that the trial court must engage in a balancing of interests. *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540 (5th Cir.2016). In *Cazorla*, the Fifth Circuit explained that the trial court must compare "the hardship to the party against whom discovery is sought against the probative value of the information to the other party." *Id.* Courts must also weigh relevant public interests at stake in this analysis. *Id.*

{¶ 39} In *Cazorla*, a large group of alien workers, many of whom were undocumented, brought a Title VII action against their employer, alleging it was common practice for their supervisors to sexually assault and harass female employees. They also alleged that their supervisors demanded money from both male and female employees in exchange for permission to use the bathroom, to use sick leave, or to transfer to another position. The employer defended against the allegations, claiming that the plaintiffs-employees fabricated the allegations in order to obtain benefits under the U visa program. *Id.* at 545. To support its defense, the employer sought discovery of the employees' U visa information. *Id.*

{¶ 40} In balancing the parties' respective interests, the court concluded that the U visa discovery was potentially probative of fraud and was, therefore, relevant to the employer's defense. *Id.* at 559. However, the court found valid the employees' fears that they would be fired if the employer discovered that they were undocumented. Indeed, the employer conceded that it would fire anyone who turned out to be undocumented. *Id.* at 560. The court also recognized that the plaintiffs had a legitimate fear of being reported to immigration authorities even though the employer was not legally required to report current or former employees upon learning that they are undocumented. The court observed that "employers commonly and unlawfully retaliate against irksome workers by reporting or threatening to report them to immigration authorities" and that "a protective order would not necessarily quell claimants' fear of suffering the same fate * * *." *Id.* at 561.

{¶ 41} The plaintiffs in *Cazorla* further argued that the employer did not need the U visa discovery because it had other material with which to undermine the plaintiffs' allegations. The court, however, rejected this argument on grounds that "U visa applications would be novel and significant impeachment evidence." *Id.* at 562. Nevertheless, the Fifth Circuit concluded that the district court's discovery order did not do enough to address how U visa litigation might intimidate individuals outside the litigation and thereby compromise the U visa program and law enforcement efforts more broadly. *Id.* Therefore, the Fifth Circuit remanded

the case to the district court to "devise an approach to U visa discovery that adequately protects the diverse and competing interests at stake." *Id.*

{¶ 42} Courts engaged in the balancing of interests must consider the potential chilling effect on aliens, who might not cooperate with law enforcement agencies if their sensitive U visa information is not kept secret. This chilling effect is known as the "in terrorem effect." *Samuel v. Signal Internatl., L.L.C.*, E.D.Tex. No. 1:13-CV-323, 2014 U.S. Dist. LEXIS 197639 (Oct. 15, 2014). Indeed, courts have acknowledged that disclosure of sensitive U visa information would violate Congress's goal of encouraging aliens to report and assist law enforcement in the prosecution of criminal activity. *See, e.g., David v. Signal Internatl., L.L.C.*, 735 F.Supp.2d 440 (E.D.La.2010) ("[A]ny inquiry into plaintiffs' current immigration[] status * * * will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they have had to prosecute their claims."). *See also EEOC v. Sol Mexican Grill L.L.C.*, D.D.C. Civil Action No. 18-2227 (CKK), 2019 U.S. Dist. LEXIS 112745 (June 11, 2019), quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004) ("Forcing those who allege discrimination to reveal their immigration status in order to have access to the courts may cause those facing discrimination * * * to 'fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends.'").

{¶ 43} The cases discussing the in terrorem effect of disclosing U visa information focus much attention on the potential for retaliation against U visa applicants, who have not obtained lawful immigration status. *See, e.g., Cazorla,* 838

F.3d at 559-560; *Rivera* at 1064 ("While documented workers face the possibility of retaliatory discharge for an assertion of their labor and civil rights, undocumented workers confront the harsher reality that, in addition to possible discharge, their employer will likely report them to the INS and they will be subjected to deportation proceedings or criminal prosecution.").

{¶ 44} Obviously, the fear of deportation is a paramount concern in such cases, and case law substantiates those fears. *See, e.g., Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1062-1063 (9th Cir.2000) (court allowed the plaintiffs to plead their claims anonymously due to their fear of retaliatory deportation); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 886-887, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (employer reported five undocumented workers after they voted in favor of union representation); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F.Supp.2d 1056, 1057 (N.D.Cal.2002) (employer recruited an undocumented worker and then reported him to the INS after he filed an FLSA claim for unpaid wages); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053, 1055 (N.D.Cal.1998) (employer reported an undocumented worker after she filed a claim for unpaid wages).

{¶ 45} However, as at least one court has observed: "A granted U visa may remove the chilling effect because the petitioner is then protected from deportation * * *." *Washington v. Horning Bros., L.L.C.*, 339 F. Supp. 3d 1106 (E.D.Wash.2018). And other courts have concluded that the in terrorem effect of disclosure can be mitigated by an order restricting use of the information. *See, e.g., Camayo v. John*

*Peroulis & Sons Sheep, Inc.*, D.Colo. Nos. 10-cv-00772-MSK-MJW and 11-cv-01132-REB-MJW, 2012 U.S. Dist. LEXIS 168078 (Nov. 27, 2012); *Velasquez Catalan v. Vermillion Ranch L.P.*, D.Colo. Civil Action No. 06-cv-01043-WYD-MJW, 2007 U.S. Dist. LEXIS 22638 (Mar. 28, 2007).

{¶ 46} By alleging that they obtained U visas and permanent resident status because they were victims of qualifying crimes committed by the defendants, the Molnars placed their U visa applications directly at issue in this case. Indeed, as previously stated, the Molnars' expert averred that "had the USCIS not found that Erika and Zsolt [Molnar] were victims of [qualifying] offenses, it would not have approved their visas." (Supplemental affidavit of Maria T. Baldini-Potermin at ¶ 24.) Therefore, under Civ.R. 26(A), the defendants are entitled to obtain that information in order to prepare a defense against those allegations. And, at the time the trial court ruled on the Molnar's motion for protective order, the Molnars had already been granted both U nonimmigrant status and permanent-resident status. We, therefore, agree with the trial court that "any possible chilling effect due to the release of the U visa applications would be muted." (Nov. 14, 2019, judgment entry.) Moreover, any potential chilling effect on other aliens as a result of disclosure is mitigated by the court's order barring the defendants from releasing the discoverable information for purposes unrelated to this lawsuit unless required by relevant law. (Nov. 14, 2019, judgment entry.)

{¶ 47} We, therefore, find that the trial court correctly interpreted and applied the law regarding the confidentiality provisions set forth in 8 U.S.C.

1367(a)(2) and 8 C.F.R. 214.14. We also find no abuse of discretion in the trial court's balance of the parties' competing interests with respect to the requested information.

{¶ 48} The sole assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
LISA B. FORBES, J., CONCURS WITH A SEPARATE CONCURRING OPINION

LISA B. FORBES, J., CONCURRING WITH SEPARATE OPINION:

{¶ 50} I respectfully concur with the majority's disposition of this case upholding the trial court's decision denying appellants' motion to quash a subpoena duces tecum issued to the Cleveland Police Department. I write separately because I find that appellants did not meet their burden of showing that the documents subpoenaed from the Cleveland Police Department are privileged. *See Waldmann*

*v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976) (the burden of establishing a privilege rests upon the party seeking protection).

**{¶ 51}** In their subpoena to the Cleveland Police Department, appellees' requests do not on their face seek information provided to the police department by any federal authorities. Consequently, appellant has not established that all of the materials requested in the subpoena issued to the Cleveland Police Department are privileged and protected from discovery by 8 U.S.C. 1367. To the extent that requested information was provided to the police department by the federal government and "relates to an alien who is the beneficiary of an application for" a U visa, this information would fall under the protection of 8 U.S.C. 1367 and should not be produced. But, in my opinion, the appellants failed to establish that the privilege applied to bar production in toto.

**{¶ 52}** The statute relied on by appellants, 8 U.S.C. 1367, is limited in its application. Pursuant to 8 U.S.C. 1367, federal officers and employees in the Departments of Justice, Homeland Security, and State are prohibited from using or disclosing "any information which relates to an alien who is a beneficiary of an application for relief" under, among other provisions, the U visa program, unless the disclosure is specifically approved by the statute. The regulations implementing 8 U.S.C. 1367 are found at 8 C.F.R. 214.14. Each of the authorized disclosures found in 8 C.F.R. 214.14(e)(1) tracks the authorized disclosures in the statute except for two disclosures not related to the issues addressed in this appeal. Of particular relevance to this analysis, the Secretary of Homeland Security and the Attorney

General are authorized to disclose information to law enforcement officials to be used solely for a legitimate law enforcement purpose. 8 U.S.C. 1367(b)(2); 8 C.F.R. 214.14(e)(1)(ii).

{¶ 53} The regulation further provides that "[a]gencies receiving information under this section, whether governmental or non-governmental, are bound" by 8 U.S.C. 1367. 8 C.F.R. 214.14(e)(2). As noted by the majority, "8 C.F.R. 214.14(e)(2) prohibits local law enforcement agencies from disclosing U visa information if the local law enforcement agency received the information from one of the governmental entities enumerated in 8 U.S.C. 1367(a)."

{¶ 54} With the subpoena issued to the Cleveland Police Department in this legal malpractice action, it appears appellees seek information provided by the appellants to the police department or generated by the police department in its investigation of the appellants' claims; in other words, the subpoena appears to request materials not protected by 8 U.S.C. 1367. However, to the extent that documents responsive to the subpoena are protected from disclosure pursuant to 8 U.S.C. 1367(a) and 8 C.F.R. 214.14(e), the police department should abide by the privilege. It is for these reasons that I concur with the majority's conclusion that the trial court did not abuse its discretion when it denied the appellants' motion to quash.