[Cite as *State v. Hayes*, 2025-Ohio-2238.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                        :             No. 24AP-216
                                                                            (C.P.C. No. 20CR-3511)
v.                                                          :

                                                                       (REGULAR CALENDAR)
Sharieff J. Hayes,                                 :

      Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on June 26, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Sharieff J. Hayes*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Defendant-appellant, Sharieff J. Hayes, appeals from the judgment of the Franklin County Court of Common Pleas finding him guilty of possession of cocaine. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 14, 2020, members of the High Intensity Drug Trafficking Area task force ("task force") reviewed the guest register at a hotel known for drug activity and discovered Hayes had paid cash for a room. The task force confirmed, through criminal justice databases, that Hayes had ties to Arizona, Michigan, and Ohio, prior convictions for drugs and burglary, and that the United States Border Patrol identified him as the intended recipient of a hydrocodone pill press. The task force then initiated surveillance on Hayes.

{¶ 3} Hayes left the hotel and was followed by undercover task force members in unmarked vehicles. The task force communicated with each other on a secure encrypted radio channel. Task force agents observed Hayes purchase large quantities of acetaminophen from two different stores located near each other. The agents noted that the material is used as a cutting agent for illegal drugs.

{¶ 4} The task force observed Hayes commit several traffic violations, and uniformed state troopers assigned to the task force in marked Ohio State Patrol vehicles initiated a traffic stop on Hayes. A K-9 unit conducted an open-air sniff of the exterior of Hayes' vehicle and alerted to the trunk area. A locked safe containing drugs, cash, and Hayes' passport and birth certificate was found in the trunk. Hayes was arrested and was indicted for one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first-degree, on July 31, 2020.

{¶ 5} On May 15, 2023, Hayes appeared with counsel for a trial, but inquired into a suppression motion. The trial court refused to hear the motion, and Hayes pled guilty to a reduced charge of possession of cocaine, a second-degree felony. A pre-sentence investigation ("PSI") was ordered, and Hayes' bond was revoked.

{¶ 6} On June 8, 2023, Hayes appeared for sentencing and requested to fire his counsel and withdraw his guilty plea. The trial court allowed Hayes' counsel to withdraw and appointed Attorney Keith Edwards as counsel. A hearing on Hayes' motion to withdraw his guilty plea was set for June 28, 2023.

{¶ 7} On June 28, 2023, Hayes appeared with newly retained Attorney Hilary Lerman. The motion to withdraw the guilty plea was continued to July 24, 2023, and the court denied Hayes' oral change of bond request. On July 24, 2023, the trial court granted Hayes' motion to withdraw his guilty plea, and again refused to modify bond.

{¶ 8} On August 11, 2023, Attorney Lerman moved to withdraw, and a hearing was set for August 23, 2023. On August 15, 2023, Hayes filed a motion for a bond hearing, a motion to remove counsel, and a motion to suppress. The trial court granted Attorney Lerman's motion to withdraw, reviewed pro se representation with Hayes, and appointed Attorney Edwards as standby counsel. The motion for a change in bond was denied. The motion to suppress was denied on January 18, 2024, after an evidentiary hearing.

{¶ 9} On January 17, 2024, Hayes filed a motion to quash two subpoenas issued to law enforcement officers. The trial court denied the motion on January 29, 2024, finding that Hayes did not have standing to quash a subpoena served upon a police agency.

{¶ 10} On March 25, 2024, Hayes, pro se, entered a no contest plea to the indictment and was found guilty. The trial court sentenced Hayes to an indefinite prison term of four to six years.

{¶ 11} Hayes brings the instant appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Hayes assigns the following as trial court errors:

[1.] The defendant was deprived of his constitutional rights to a bail under the Eighth Amendment of the United States Constitution and; Section 9 Article 1 of the Ohio Constitution, due to lack of the required hearing contrary to 2937.222 of the Revised Code.

[2.] The defendant was deprived of his constitutional right to due process of the law under the Fifth Amendment of the United States Constitution, due to the lack of journal entries from the trial court contrary to Ohio Civil Rule 58 on the court's judgment in response to the defendant's June 23, 2023 "BOND-HEARING MOTION"; August 15, 2023 "BOND-HEARING MOTION"; September 26, 2023 "MOTION TO STAY EXECUTION" and; January 19, 2024 "CONTINUANCE ORDER" (verbal bond motion).

[3.] The defendant was consecutively deprived of his constitutional right to equal protection of the law under the Fourteenth Amendment of the Untied States Constitution, due to the undermined presumption of innocence by the trial court contrary to 2901.05(A) of the Revised Code, during July 24, 2023 proceedings; August 23, 2023 proceedings and; January 23, 2024 proceedings.

[4.] The defendant was deprived of his constitutional right to equal protection of the law under the Fourteenth Amendment of the United States Constitution, by the manifest bias of the trial court contrary to Ohio Code of Judicial Conduct Canon Rule 2.2; Rule 2.3; and Rule 2.6, during May 15, 2023 Proceedings; August 23, 2023 proceedings; January 18, 2024 proceedings and; March 25, 2024 proceedings.

[5.] The trial court prejudicially erred in the overruling of defendant's January 17, 2024 "MOTION TO QUASH," by the lack of an adequate determining principle in its January 29, 2024 "ENTRY/ORDER DENYING MOTION TO QUASH."

[6.] The trial court prejudicially erred in the overruling of defendant's August 21, 2023 pro se "MOTION TO SUPPRESS," by lack of an adequate determining principle in its February 28, 2024 "ENTRY/ORDER DENYING MOTION TO SUPPRESS."

(Sic passim.)

## III. LEGAL ANALYSIS

{¶ 13} In support of his first assignment, of error Hayes argued that he was unconstitutionally denied bail, and in his second and third assignments of error, Hayes argued that the trial court erred by its lack of journal entries regarding bond hearings and improperly used the PSI to determine pretrial bail. We shall combine assignments of error Nos. 1, 2, and 3 because they are related.

{¶ 14} We note that while the terms bail and bond both appear, there is a legal difference. Bail is a broader term that applies to the security provided to ensure the appearance of an accused person at all stages of a criminal proceeding and can be cash or a bond. *State v. Banks*, 2023-Ohio-292 (4th Dist.). A bond is a specific type of bail in the form of a contract with the state, often involving a surety, where the accused or surety promises to pay a monetary penalty if the accused fails to appear in court. *Id.*

{¶ 15} However, before we address the merits, we must first address mootness. After a conviction, " ' "any error concerning the issue of pretrial bail is moot," ' " and may not be raised on direct appeal. *State v. Leonard*, 2004-Ohio-6235, ¶ 39, quoting *State v. Hughbanks*, 2003-Ohio-4121, ¶ 39, quoting *State v. Patterson*, 110 Ohio App.3d 264, 271 (10th Dist. 1996). The proper procedure for seeking relief from improper pretrial bail is through a habeas corpus proceeding filed prior to conviction, and that remedy is now foreclosed. *Hendricks v. Lutz*, 2015-Ohio-5229 (5th Dist.).

{¶ 16} Because Hayes' assignments of error are moot, we find no reversible error in the trial court's bond decision. Accordingly, Hayes' first, second, and third assignments of error are overruled.

{¶ 17} Hayes argues as his fourth assignment of error, that the trial court judge violated the Ohio Code of Judicial Conduct. Hayes contends the judge acted in a coercive manner against him, was biased and impartial, and failed to provide a pro se defendant special accommodations.

{¶ 18} This appeal is not the proper venue because claims of "judicial misconduct under the Code of Judicial Conduct are not cognizable on appeal" and this court has no jurisdiction over the enforcement of the Code of Judicial Conduct. *State v. Wright*, 2004-Ohio-677, ¶ 10 (10th Dist.). The Chief Justice of the Supreme Court of Ohio has the exclusive authority to determine if a common pleas court judge is biased or prejudiced. *Beer v. Griffith*, 54 Ohio St.2d 440 (1978). Allegations of judicial misconduct are investigated by the Office of Disciplinary Counsel, and judicial-misconduct complaints are heard by the Board of Professional Conduct. *In re Disqualification of Allen*, 2023-Ohio-3238.

{¶ 19} R.C. 2701.03 provides the exclusive means for a party to assert that a common pleas judge is biased or prejudiced by filing an affidavit of disqualification. *Capital City Community Urban Redevelopment Corp. v. Columbus*, 2012-Ohio-6025 (10th Dist.). Hayes attempted, on multiple occasions, to have the trial court judge disqualified, pursuant to R.C. 2710.03, based on her bias and prejudice towards him, but he was unsuccessful. The Supreme Court found Hayes failed to present evidence to substantiate his claim and that his subjective belief of the trial court's alleged improprieties fell short of supporting an affidavit of disqualification. *In re Disqualification of Phipps*, Sup. Ct. No. 23-AP-169 (Dec. 5, 2023).

{¶ 20} Hayes' contentions that the trial court judge violated the Code of Judicial Conduct are beyond the reach of this court. *State v. Coomer*, 2010-Ohio-3474 (12th Dist.).

{¶ 21} Hayes' fourth assignment of error lacks merit and is overruled.

{¶ 22} Hayes contends in his fifth assignment of error, that the trial court judge erred when it denied the motion to quash for lack of standing. An appellate court generally applies an abuse-of-discretion standard in reviewing a trial court's decision concerning a motion to quash a subpoena. *State v. Strickland*, 2009-Ohio-3906 (8th Dist.). An abuse of discretion occurs when the trial court acts in an unreasonable, arbitrary, or unconscionable manner. *State v. Darmond*, 2013-Ohio-966.

{¶ 23} Under Crim.R. 17(C), a subpoena may be used to command a person to produce in court books, papers, documents and other objects. However, the court, upon motion of a party, may quash or modify the subpoena if compliance would be unreasonable or oppressive. Crim.R. 17(C).

{¶ 24} The party filing the subpoena bears the burden of demonstrating that the subpoena is not unreasonable or oppressive. *Cincinnati v. Ilg*, 2013-Ohio-2191 (1st Dist.). However, the proponent does not have exclusive standing to challenge a subpoena, and "[o]nly litigants with standing are entitled to have a court determine the merits of the claims they have presented." *In re S.G.D.F.*, 2016-Ohio-7134, ¶ 11 (10th Dist.). Crim.R. 17(C) contains no limitations on who can move to quash or modify a subpoena served upon a police agency, and there is a paucity of case law interpreting this matter.

{¶ 25} While Crim.R. 17(C) does not expressly limit who can challenge a subpoena, there is some guidance from other sources. "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with the rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists." Crim.R. 57(B); *State v. Dillon*, 2007-Ohio-4934, ¶ 18 (3d Dist.). In other words, while the Ohio Rules of Civil Procedure generally do not apply in criminal matters, they may apply where there is no criminal rule on point. *Dillon* at ¶ 18.

{¶ 26} Civ.R. 45 similarly does not limit who could file a motion to quash, but appears to permit parties other than the recipient to quash only on a claim of personal right or privilege. *Molnar v. Wong & Assocs. Co., L.P.A.*, 2021-Ohio-1402 (8th Dist.) (civil plaintiff had standing to quash a defendant's subpoena served upon a police agency if the subpoena implicates issues of privilege); *Hanick v. Ferrara*, 2020-Ohio-5019 (7th Dist.) (a party asserting privilege had standing to file a motion to quash). There is little precedent on this issue, and case law is "far from black-letter law." *Father's House Internatl., Inc. v. Kurguz*, 2014 Ohio Misc. LEXIS 24831, *6 (C.P. Apr. 4, 2014) (plaintiff and a non-party have standing to challenge subpoenas issued by defendant to third-party banks seeking their personal bank records).

{¶ 27} Fed.R.Crim.P. 17(c), which is substantially the same as the Ohio rule, does not limit who can challenge a subpoena. *State v. Geis*, 2 Ohio App.3d 258 (10th Dist. 1981). Under the federal rule, a party lacks standing to challenge a Fed.R.Crim.P. 17(c) subpoena

unless the subpoena infringes on the moving party's rights. *United States v. Vo*, 78 F.Supp.3d 171 (D.D.C. 2015). Courts in the Sixth Circuit have consistently found that a party in a criminal proceeding lacks standing to challenge a subpoena issued to a third party. *United States v. Justice*, 14 Fed.Appx. 426 (6th Cir. 2001). *See United States v. Carpenter*, 2007 U.S. Dist. LEXIS 113893 (N.D.Ohio June 7, 2007) (state lacked standing to quash defendant's subpoena to attorney); and *United States v. Louis Trauth Dairy, Inc.*, 1994 U.S. Dist. LEXIS 20962 (S.D.Ohio Dec. 7, 1994) (questioning the government's standing to challenge defendant's subpoena to non-party).

{¶ 28} We must look to see if Hayes has sufficient interest to challenge the law enforcement subpoenas. Personal rights or privileges supporting a claim of standing have been recognized with respect to personal and corporate bank records, information contained in an employee personnel record, and Indian tribal records. *Hunter v. Shield*, 2020 U.S. Dist. LEXIS 206525 (S.D.Ohio Nov. 4, 2020). Hayes has not identified any privileged information at issue.

{¶ 29} In the absence of contrary language, and under the facts and circumstances of this matter, we find that Hayes did not have standing to challenge the subpoenas issued to the law enforcement officers because he did not show any personal infringement from the subpoenaed information and lacks any claim of privilege.

{¶ 30} Even assuming Hayes had standing to file a motion to quash, he had no objective basis to challenge the subpoena, so the trial court was correct to deny the motion to quash. *United States v. Compton*, 1994 U.S. App. LEXIS 25208 (6th Cir. July 6, 1994). Hayes argued that the subpoena directed to Detective Kevin George and Trooper Lindsey Barrett are unnecessary and oppressive. However, he is not able to assess the subpoenas' impact on the law enforcement officers, and Hayes has not directed us to any precedent providing otherwise. *Riding Films, Inc. v. Doe*, 2013 U.S. Dist. LEXIS 92049 (S.D.Ohio July 1, 2013) (in a civil matter, only the entity responding to the subpoena has standing to challenge the subpoena based on undue burden).

{¶ 31} A trial court is generally required to conduct an evidentiary hearing on a motion to quash a subpoena. *State v. Sims*, 2006-Ohio-2415 (9th Dist.). At the hearing, the proponent of the subpoena must demonstrate that the subpoena is not unreasonable or oppressive. *In re Subpoena Duces Tecum Served Upon Atty. Potts*, 2003-Ohio-5234.

{¶ 32} However, it may be harmless error to not conduct a hearing under an exception when the appeal is from a final judgment. *State v. Findler*, 2021-Ohio-449 (1st Dist.). *See Miamisburg v. Rinderle,* 2015-Ohio-351 (2d Dist.) (harmless error when trial court granted the state's motion to quash subpoenas issued by defendant to prosecutor); *State v. Bennett*, 2019-Ohio-4937 (3d Dist.) (failure to hold a hearing is harmless error when the subpoena was plainly improper).

{¶ 33} In a matter regarding an assault during an exchange of children pursuant to a visitation order, the trial court granted the state's motion to quash subpoenas issued to the juvenile court judge, one of the investigating officers, and a children service board employee after determining, without a hearing, that the proffered testimony was not relevant. *State v. Tuttle*, 2003-Ohio-4260 (5th Dist.).

{¶ 34} A trial court quashed subpoenas without a hearing when a defendant issued subpoenas to individuals with no personal knowledge of the incident. *State v. Hudson*, 1997 Ohio App. LEXIS 5009 (5th Dist. Oct. 27, 1997). A defendant's subpoena duces tecum for a copy of a disciplinary complaint against a co-defendant's attorney was quashed without a hearing or in camera review because the trial court determined the information was not subject to disclosure. *State v. Bonilla*, 2009-Ohio-4784 (2d Dist.).

{¶ 35} The trial court properly denied the motion without a hearing because Hayes failed to present any basis to quash the subpoenas. Neither officer filed a motion regarding the subpoenas and there is nothing in the record to indicate that they objected to the subpoenas. The September 27, 2023 subpoena duces tecum required the officers to provide the prosecutor any impeachment evidence regarding discipline for dishonest or untruthful behavior pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *State v. Brown*, 2017-Ohio-7134 (10th Dist.). The state has an affirmative obligation to disclose such information to the defense. *State v. Crawford*, 2009-Ohio-4649 (10th Dist.).

{¶ 36} While generally the trial court should conduct an evidentiary hearing to determine whether a subpoena is overly broad or oppressive, under the circumstances of this matter, the court could clearly ascertain Hayes could not make the required showing. *State v. Hurt*, 2024-Ohio-3115 (1st Dist.). The request is not burdensome or unreasonable, and clearly does not support a motion to quash. The outcome would not have been any different had the court conducted an evidentiary hearing.

{¶ 37} In this case, after a review of the record and upon consideration of the evidence presented herein, we conclude that the motion to quash was properly denied, and any error in failing to hold an evidentiary hearing on the motion was harmless because Hayes had not demonstrated that the outcome would not have been different if the trial court had conducted an evidentiary hearing.

{¶ 38} Hayes' fifth assignment of error is overruled.

{¶ 39} In his sixth assignment of error, Hayes argues that the trial court erred in overruling his motion to suppress. Hayes specifically contends that there was no valid reason for the traffic stop and subsequent K-9 deployment, and that he was impermissibly targeted for arrest. We disagree.

{¶ 40} Appellate review of a motion to suppress normally involves a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372. When considering a motion to suppress, the trial court assumes the role of trier of fact and, is therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Reedy*, 2006-Ohio-1212 (10th Dist.). Accordingly, an appellate court must defer to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.* However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997). Whether a motion to suppress satisfies the minimum standards under Crim.R. 47 is a legal question. *State v. Smith*, 2014-Ohio-712 (10th Dist.).

{¶ 41} When a defendant files a motion to suppress under Crim.R. 47 on the ground that Fourth Amendment rights have been violated by an unreasonable search or seizure, the defendant has the initial burden to demonstrate that the state lacked a warrant, and to state the grounds upon which the defendant challenges the warrantless search or seizure. *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988). Once the defendant satisfies the initial burden under Crim.R. 47, the burden then shifts to the state to prove that it had justification to conduct the warrantless search or seizure. *Id.*

{¶ 42} The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures, and imposes a reasonableness standard upon government officials who must exercise discretion. *Delaware v. Prouse*, 440 U.S. 648 (1979). Ohio Constitution, Article I, Section 14 contains a similar provision. *State v.*

*Williams*, 2008-Ohio-433 (2d Dist.). Warrantless searches and seizures conducted by the government are per se unreasonable, and the exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure unless an exception applies. *State v. Sears*, 2020-Ohio-4654 (10th Dist.).

**{¶ 43}** An investigative stop by a police officer is one of the common exceptions to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1 (1968). To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. *Columbus v. Beasley*, 2019-Ohio-719 (10th Dist.).

**{¶ 44}** Reasonable, articulable suspicion has been defined as specific and articulable facts which reasonably warrant the intrusion, and requires " 'more than an inchoate suspicion or a "hunch," but less than the heightened level of certainty required for probable cause.' " *State v. Parrish*, 2002-Ohio-3275, ¶ 16 (10th Dist.), quoting *State v. Seals*, 1999 Ohio App. Lexis 6398 (11th Dist. 1999). If an officer's decision to stop a motorist for a traffic violation is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Mays*, 2008-Ohio-4539.

**{¶ 45}** While personal observation of a traffic violation is sufficient to establish reasonable and articulable suspicion, it is not the only method to establish a legal justification to make a traffic stop. Information communicated to a trooper by a task force following a vehicle, creates reasonable suspicion and justification to effectuate a *Terry* stop. *State v. Johnson*, 2017-Ohio-5527 (10th Dist.) (undercover officer personally observed traffic violation and communicated information to patrol officer).

**{¶ 46}** A de minimis traffic violation provides the requisite probable cause for a non-investigatory traffic stop, even if the officer has an ulterior motive for the stop. *State v. Robertson*, 2023-Ohio-2746 (10th Dist.). Generally, a law enforcement officer who stops a vehicle for a traffic violation " 'may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *State v. Phillips*, 2014-

Ohio-5162, ¶ 19 (10th Dist.), quoting *State v. Aguirre*, 2003-Ohio-4909, ¶ 36 (4th Dist.), citing *State v. Carlson*, 102 Ohio App.3d 585, 598 (9th Dist. 1995).

{¶ 47} A lawfully detained vehicle may be subjected to a K-9 check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity, so long as it is conducted during the time period necessary to effectuate the original purpose of the stop. *State v. Neal*, 2016-Ohio-1406 (10th Dist.). Both federal and state courts have determined that an exterior sniff by a trained narcotics canine to detect drugs is not a search within the meaning of the Fourth Amendment to the United States Constitution. *State v. Braucher*, 2024-Ohio-811 (5th Dist.). If the canine alerts to the presence of drugs, an officer has probable cause to search the vehicle. *Id.*

{¶ 48} The trial court overruled Hayes' motion to suppress, reasoning that the trooper had probable cause to initiate a traffic stop and to search the vehicle. After our review, we agree with the trial court that the trooper had the necessary reasonable and articulable suspicion to stop Hayes, and the decision to deny the motion to suppress was proper under the circumstances.

{¶ 49} Detective George testified that the task force set up surveillance on Hayes and followed him after he left the motel. Detective George, a former patrol officer, paced Hayes' vehicle speeding, and observed Hayes cross marked lanes and fail to signal. Detective George testified that state troopers, who were out of sight but close, were directed to perform a traffic stop on Hayes' vehicle based on the reasonable suspicion of the officers surveilling Hayes.

{¶ 50} Trooper Barrett testified that her normal assignment was as a K-9 handler involved in drug interdiction, but was also assigned to the task force as needed. On the morning of May 14, 2020, Trooper Barrett received information from the task force that Hayes was a target for suspected involvement with illegal drugs, and began to clandestinely follow Hayes. Trooper Barrett was informed that Hayes had committed traffic violations as he was being followed, and she made a traffic stop based on this information. Trooper M. Wilson arrived to assist with the traffic stop a few minutes later.

{¶ 51} Trooper Barrett testified that she observed Hayes demonstrating nervous behavior, noticed the large quantity of pain killers in the vehicle, and based on her training and experience, decided to deploy her K-9 to the exterior of the vehicle several minutes into

the stop. The K-9 alerted to the trunk area, and a subsequent search revealed a lockbox in the trunk. Hayes would not grant access to the lockbox, and the troopers opened it by force. The key would be found later in Hayes' wallet. Trooper Barrett testified that she summoned Detective George to the scene once drugs were found in the lockbox.

{¶ 52} Under the collective knowledge doctrine, "knowledge of law enforcement officers is imputed to other officers." *State v. Muldrow*, 2016-Ohio-4774, ¶ 18 (10th Dist.). The doctrine recognizes that an officer relying solely on information provided by other officers may effectuate a valid *Terry* stop only if those officers have reasonable suspicion to make the stop. *Maumee v. Weisner*, 87 Ohio St.3d 295 (1999). Because Trooper Barrett received information regarding Hayes' traffic violations through Detective George and the task force, she possessed reasonable suspicion under the collective knowledge doctrine to initiate the traffic stop. *Id.*

{¶ 53} After our review of the record, we find the trial court's findings are supported by competent, credible evidence, and conclude that Trooper Barrett had reasonable suspicion in stopping Hayes.

{¶ 54} Accordingly, the trial court properly concluded that the traffic stop did not violate Hayes' constitutional rights. The trial court did not err in overruling appellant's motion to suppress evidence. We overrule Hayes's sixth assignment of error.

## IV. CONCLUSION

{¶ 55} For the foregoing reasons, Hayes' six assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

MENTEL, J., concurs.
EDELSTEIN, J., concurs in judgment only.

_____